John C. Wilen v. William Falkenstein

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-315-CV

JOHN C. WILEN APPELLANT

V.

WILLIAM FALKENSTEIN APPELLEE

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

This appeal arises from a trespass suit brought by Appellee William Falkenstein against his neighbor, Appellant John C. Wilen, for causing a tree service to trim a tree on Falkenstein’s property.  The trial court entered judgment in accordance with the jury’s verdict, awarding Falkenstein $5,300.00 in actual damages, $18,000.00 in exemplary damages, and attorney’s fees of $29,700.00.  Wilen raises eight issues on appeal, challenging the sufficiency of the evidence to support the jury’s findings of trespass, actual damages, and exemplary damages; challenging the attorney’s fees award; and claiming charge error.  
Because we hold that no legal basis exists for an attorney’s fees award to Falkenstein, we 
will modify the judgment by deleting the attorney’s fees award
, and 
as modified, we will affirm the trial court’s judgment.

II.  Factual Background

A. Falkenstein’s Testimony

Falkenstein testified that he and Wilen were neighbors.  When Falkenstein moved into his house in Frisco, Texas, he had Fannin Tree Farm plant thirty trees on his property, including two trees—one on each side of the pool—that matched.  As the trees grew, Wilen informed Falkenstein that one of the matched trees impeded Wilen’s view from his balcony of the subdivision’s clubhouse.  Once or twice, Wilen suggested to Falkenstein that the tree service Wilen used come over to Falkenstein’s property and trim the view-blocking tree; Wilen offered to pay the cost of having this tree trimmed.  Falkenstein declined this offer and told Wilen that he would take care of his own trees.  In October 2002, Falkenstein had his trees trimmed in an effort to appease Wilen. 

About a month later, Falkenstein left town for a two-week vacation.  Falkenstein gave Wilen his vacation itinerary and emergency contact phone numbers.  Upon returning home after his vacation, Falkenstein “noticed a big hunk of [his] tree was missing.”  No tree branches were on the ground around the tree, so Falkenstein concluded that someone must have cut his tree. Because the tree that had been cut was the view-blocking tree, Falkenstein asked Wilen if he had cut the tree.  Wilen said that he had not personally cut the tree and claimed that he did not know anything about the tree cutting. Falkenstein asked Wilen for the name of the tree service that Wilen used, but Wilen refused to provide it.  Wilen offered to pay the cost of completely cutting down the tree, but he would not agree to pay to replace the tree. 

Falkenstein introduced into evidence photographs of the trimmed tree. 
B. Wilen’s Testimony

Wilen testified that he used TLS Landscaping to trim his trees.  He said that when TLS Landscaping performed work at his home in the spring or summer of 2002, he told Tom Sawyers of TLS Landscaping that in the future if he was going to be performing trimming work at Wilen’s house, he should talk to Falkenstein about trimming his trees, too.  Wilen said that he mentioned a specific tree in Falkenstein’s yard that was not on the property line.

Wilen testified that one morning in November while Falkenstein was on vacation, he received a call from Sawyers at TLS Landscaping.  Tom said that his employees were coming to Wilen’s house.  Scott Story and Hank Eugenio of TLS Landscaping arrived at Wilen’s house, and Story asked Wilen which trees needed to be trimmed.  Wilen pointed to the view-blocking tree in Falkenstein’s yard near the pool.  Story asked how much needed to be trimmed, and Wilen told him to come up to the balcony to take a look.  Wilen testified that thereafter the view-blocking tree was cut without any direction or suggestion by him, but he admitted that he answered the two questions that Story asked—which tree to trim and how much to trim it.  Wilen testified that he “assumed” that Story had permission to trim Falkenstein’s tree. 

Wilen said that he did not enter Falkenstein’s property and denied seeing the tree being cut.  Wilen also testified that he did not receive a bill for the tree trimming. 

C. Testimony by TLS Landscaping Employees

Story, a crew leader for TLS Landscaping, testified that on the date in question, he was instructed to go to Wilen’s house and to perform whatever work Wilen requested.  Story said that he and Eugenio went to Wilen’s house, and he asked Wilen what needed to be done.  In response, Wilen took Story to the upstairs balcony, pointed out a tree on Falkenstein’s property that was blocking the view of the clubhouse, and told Story to cut it.  Story said that he told Wilen that it was not proper to “top” a tree and explained to Wilen that it was not TLS Landscaping’s usual practice to take “a large lump sum off” the top.  Story testified that Wilen responded, “[I]t’s okay, just go ahead.” The group went into Wilen’s backyard, and Eugenio went over the fence into Falkenstein’s yard and climbed the tree.  Wilen stood in his yard, moving his arms up and down to indicate to Eugenio the exact spot to cut the tree. When Eugenio reached a certain point in the tree, Wilen indicated that was the appropriate place to cut the tree, and Story told Eugenio to cut the tree at that level.  Eugenio cut the tree, threw the branches over the fence into Wilen’s yard, and hauled them off.  Story said that they cut about five feet off the top of the tree because Wilen instructed them to do it.  Story further testified that Wilen stood and watched as they cut the tree.  Story said that he obviously knew the tree was not on Wilen’s property but said that because they had worked for Wilen “for so long, I just assumed whatever he wanted was fine to do.”

D. Testimony Regarding Tree Value

Richard Peters testified that he has been employed by Fannin Tree Farm for twenty-seven years and that he had planted all the major trees on Falkenstein’s property.  Peters confirmed that the two trees planted near Falkenstein’s pool were matching trees.  He said that the tree at issue was healthy prior to being “butchered” and that it looked like a “table top” afterwards.  Peters testified that the topped tree will never grow enough to catch up with its mate.  He said that although the health of the tree has not necessarily been compromised, the tree’s growing pattern has been altered so that it will never again match the shape of its mate.  

Peters testified that the topped tree is not marketable.  He said that the only way to put Falkenstein back in the same position that he was in prior to the tree being “butchered” would be to replace the tree.  Peters submitted a “Replacement Proposal,” showing that the replacement cost of the tree is $4,151.39. 

E. The Jury’s Verdict

After hearing testimony—including testimony concerning Falkenstein’s attorney’s fees—and reviewing the evidence, the jury found that Wilen had trespassed, assessed actual damages of $5,300.00, found that the harm to Falkenstein resulted from Wilen’s malice, assessed exemplary damages of $18,000.00, and found that reasonable and necessary attorney’s fees for Falkenstein were $29,700.00.  This appeal followed.

III.
  Sufficiency of the Evidence

A. Sufficiency Standards of Review

1. Legal Sufficiency

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  
When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.  
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

2. Factual Sufficiency

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

3. Sufficiency of the Evidence to Support Finding Based on Clear and Convincing Evidence

When a jury makes an affirmative finding of malice that is required to be based on clear and convincing evidence, in conducting a legal sufficiency review we review all the evidence in the light most favorable to the jury’s finding, taking into account contrary undisputed facts, to determine whether reasonable jurors could have formed a firm belief or conviction regarding malice.  
Qwest Int’l Commc’ns, Inc. v. AT & T Corp.
, 167 S.W.3d 324, 326 (Tex. 2005); 
see also In re J.F.C.
, 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal and factual sufficiency reviews in termination of parental rights appeal).  When reviewing the factual sufficiency of the evidence to support a finding required to be based on clear and convincing evidence, we must give due consideration to any evidence the fact-finder could reasonably have found to be clear and convincing.  
J.F.C.
, 96 S.W.3d at 266-67.  We must consider the disputed evidence and determine whether a reasonable fact-finder could have resolved that evidence in favor of the finding.  
Id.
  The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of its finding is so significant that a fact-finder could not have reasonably formed a firm conviction or belief.  
Id. 
(citing 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002)).  Both legal and factual sufficiency reviews of a finding required to be based on clear and convincing evidence must take into consideration whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the matter required to be established by clear and convincing evidence.  
J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25.

B. Trespass

In his first issue, Wilen argues that Falkenstein failed to introduce legally and factually sufficient evidence to prove all the elements necessary to establish a trespass to real property.  Trespass to real property occurs when a person enters another’s land without consent.  
See Gen. Mills Rests., Inc. v. Tex. Wings, Inc.
, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.).  To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff’s land and the entry was physical, intentional, and voluntary, and (3) the defendant’s trespass caused injury to the plaintiff.  
See generally Stone Res., Inc. v. Barnett
, 661 S.W.2d 148, 151 (Tex. App.—Houston [1st Dist.] 1983, no writ).  Concerning the intent element of the tort, trespass requires only proof of interference with the right of possession of real property; t
he only relevant intent is that of the actor to enter the property.  
Accord Trinity Universal Ins. Co. v. Cowan
, 945 S.W.2d 819, 827 (Tex. 1997).  The actor’s subjective intent or awareness of the property’s ownership is irrelevant.  
Id.
; 
see, e.g., McDaniel Bros. v. Wilson
, 70 S.W.2d 618, 621 (Tex. Civ. App.—Beaumont 1934, writ ref’d) (holding that “every unauthorized entry upon land of another is a trespass” even if no damage is done and “the intent or motive prompting the trespass is immaterial”).

A person likewise trespasses when he intentionally causes a third person to enter land in the possession of another.  
Restatement (Second) of Torts 
§ 158 cmt. j (1977).  The Restatement (Second) of Torts explains agency liability in a trespass suit as follows:

Causing entry of a third person
.  If, by any act of his, the actor intentionally causes a third person to enter land, he is fully liable as though he himself enters.  Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person’s entry, if it be a trespass.  This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question.

Id.
; 
Watson v. Brazos Elec. Power Coop.
, 918 S.W.2d 639, 645 (Tex. App.—Waco 1996, writ denied); 
see Houston Lighting & Power Co. v. Sue
, 644 S.W.2d 835, 842 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.); 
Pargas of Longview, Inc. v. Jones
, 573 S.W.2d 571, 574 (Tex. Civ. App.—Texarkana 1978, no writ) (holding principal liable for trespass it directed agent to commit). 

Here, the evidence demonstrates that TLS Landscaping’s employees entered Falkenstein’s property at Wilen’s direction and request.  Story testified that he did not know what work was to be performed when he was sent to Wilen’s house; Wilen instructed him to trim a specific tree on Falkenstein’s property.  Both Wilen and Story testified that Wilen pointed out the tree to be cut, and the evidence established that both Wilen and Story knew that the tree was not on Wilen’s property.  No one testified that Story had permission to be on Falkenstein’s property.

Wilen claims on appeal that Falkenstein failed to prove ownership of his yard.  Throughout the trial, however, the parties referred to Falkenstein’s house, Falkenstein’s property, and the trees on Falkenstein’s property all as being owned by Falkenstein.  No evidence exists that Falkenstein did not own the yard on which his house and the tree at issue were situated.  
In fact, at trial, the issue of Falkenstein’s ownership of his yard was not contested.

Viewing the evidence under the appropriate standards of review, Falkenstein proved by legally and factually sufficient evidence each element of trespass when he proved that Wilen directed a tree trimming service to enter his (Falkenstein’s) property and to trim a tree, all without his knowledge or consent and while he was on vacation.  
See Sue
, 644 S.W.2d at 842 (holding trial court did not err by entering judgment against HL&P on the basis of trespass because it was undisputed that Ebasco was on the land at the request of HL&P).  We overrule Wilen’s first issue.

C. Damages

1. Actual Damages

In his second issue, Wilen initially argues that the evidence is factually insufficient to support the actual damages award.  Specifically, he contends that no evidence exists of diminution in the value of the land as a result of the alleged trespass and that there was no actual damage to the tree, which is still healthy and growing.  Courts have gone to great lengths to hold trespassers liable for the consequences of their acts.  
Rochelle v. Carr
, 418 S.W.2d 710, 712 (Tex. Civ. App.—San Antonio 1967, no writ).  In the cases of trespassory damage to trees, the measure of damages is the diminution in the value of the land or, under some circumstances, the value of the trees destroyed or removed.  
Id.
 at 711 (citing 
Cummer-Graham Co. v. Maddox
, 155 Tex. 284, 291, 285 S.W.2d 932, 936 (1956)).  If a defendant’s cutting down of shade or ornamental trees does not reduce the market value of the property, courts are authorized to award damages for the intrinsic value of the trees.  
Porras v. Craig
, 675 S.W.2d 503, 506 (Tex. 1984).

The parties here agree that no difference exists in the fair market value of Falkenstein’s property before and after the tree trimming.  We therefore analyze the record for evidence of the intrinsic value of the tree.  
See id.
 at 506.  

Falkenstein testified that he had the two matching trees planted on either side of his swimming pool “so it would look good for landscaping.”  The matching trees were the “focal point from his backyard from the inside of his house.”  Falkenstein’s attorney introduced numerous photographs into evidence, showing the dramatic difference between the two “matching trees” after the tree trimming.  In addition to Falkenstein’s testimony describing the ornamental or aesthetic purpose that the trees served, Peters, an employee of Fannin Tree Farm, also testified that the trees were planted to be matching. Peters’s “Replacement Proposal”—dated November 25, 2002, which was a year and half prior to the trial—showed that the cost to replace the tree would be $4,151.39.  Moreover, Falkenstein testified that prior to filing the lawsuit against Wilen, he asked Wilen for $5,000.00 to be used to replace the tree and to purchase a guaranty.

After reviewing all of the evidence, we cannot say that the evidence supporting the jury’s $5,300.00 actual damages award is so weak or that the evidence to the contrary is so overwhelming that the actual damages award should be set aside.  
See Mar. Overseas Corp.
, 971 S.W.2d at 406-07; 
Garza
, 395 S.W.2d at 823.  Instead, it was within the jury’s discretion to award actual damages in the amount of $5,300.00 based on the intrinsic value of the cut tree.
 
 
See Lamar County Elec. Coop. Ass’n v. Bryant
, 770 S.W.2d 921, 922-23 (Tex. App.—Texarkana 1989, no writ) (upholding jury’s finding of intrinsic value and award of $2,500.00 in actual damages); 
Garey Constr. Co. v. Thompson
, 697 S.W.2d 865, 867 (Tex. App.—Austin 1985, no writ) (upholding $1,500.00 actual damage award for intrinsic value of several shrubs and twelve-inch tree damaged by trespass); 
see also Lucas v. Morrison
, 286 S.W.2d 190, 191 (Tex. Civ. App.—San Antonio 1956, no writ) (upholding actual damages based on intrinsic value of tree cut down by trespasser because tree provided shade for landowner’s milk cows).  We overrule Wilen’s second issue as it relates to the actual damages award.

2. Exemplary Damages

a. The Malice Finding

Also under his second issue, Wilen argues that the evidence is factually insufficient to support the exemplary damages award because his conduct was not malicious.  Exemplary damages are recoverable for the tort of trespass if the trespass was committed maliciously.  
Williams v. Garnett
, 608 S.W.2d 794, 797 (Tex. Civ. App.—Waco 1980, no writ); 
Upham Gas Co. v. Smith
, 247 S.W.2d 133, 135 (Tex. Civ. App.—Fort Worth
 1952, no writ); 
see also
 1 
J. Hadley Edgar, Jr. & James B. Sales, Texas Torts and Remedies 
§ 22.04[1][b] (2005); 
Cargal v. Cargal
, 750 S.W.2d 382, 385 (Tex. App.—Fort Worth 1988, no writ) (recognizing that exemplary damages are recoverable for malicious trespass); 
see also Green Tree Acceptance of Tex., Inc. v. McGrath
, No. 04-97-00226-CV, 1998 WL 337755, at *6 (Tex. App.—San Antonio June 24, 1998, no pet.) (not designated for publication).  The trespass must be initiated by or accompanied with some evil intent or with complete disregard of anyone’s rights.  
Watson
, 918 S.W.2d at 645; 
Mayflower Inv. Co. v. Stephens
, 345 S.W.2d 786, 793 (Tex. Civ. App.—Dallas 1960, writ ref’d n.r.e.).  Exemplary damages may not be awarded where it appears that the defendant acted in good faith or without wrongful intention or in the belief that he was exercising his rights.  
Mayflower Inv. Co.
, 345 S.W.2d at 793
.

Here, the trial court asked the jury whether it found by clear and convincing evidence that the harm to Falkenstein resulted from malice.  The charge defined malice as including a “specific intent by John C. Wilen to cause substantial injury to William Falkenstein,” and the jury answered yes to this question.

We note that the cases prescribing exemplary damages for a “malicious” or “willful” trespass are based on the old, common law “actual malice” definition requiring proof of “ill-will, spite, evil motive, or purposing the injuring of another.”  
See, e.g.
, 
Clements v. Withers
, 437 S.W.2d 818, 822 (Tex. 1969).  The common law definition of malice was incorporated into the statutory definition codified in the civil practice and remedies code.  
See
 Act of April 6, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 (providing two-part definition of “malice”) (amended 2003) (current version at 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.001(7) (Vernon Supp. 2005); 
see also 
Joe McKay,
 Texas Public Policy on Insuring Punitive Damages: Time for a Fresh Look
, 2 
Tex. Wesleyan Law Rev
. 205, 210 (1995).  The statutory definition of malice raised the standard of proof required to attain exemplary damages; the statutory definition requires proof of the defendant’s specific intent “to cause substantial injury to the claimant.”  
See
 McKay, 2 
Tex. Wesleyan Law Rev
. at 210.  Thus, proof of the statutory standard of malice necessarily includes, and subsumes, proof of common law “actual malice.”  
Accord id.
 

Because clear and convincing evidence is required to support the jury’s malice finding, we view all the evidence in the light most favorable to the finding, taking into account contrary undisputed facts, to determine whether reasonable jurors could have formed a firm belief or conviction regarding malice.  
Qwest Int’l Commc’ns, Inc.
, 167 S.W.3d at 326.  Thus, we focus our review on whether there was clear and convincing evidence that Wilen’s trespass through TLS Landscaping was performed with malice, that is, performed with a specific intent to cause substantial injury to Falkenstein.

The evidence established that Wilen directed TLS Landscaping to enter Falkenstein’s yard and to trim five feet off the top of the view-blocking tree.  When Wilen told Story how he desired Falkenstein’s tree to be trimmed, Story testified that he explained that TLS Landscaping usually did not “top” a tree.  Wilen reassured Story that it was “okay” and directed Story to proceed.  Wilen’s actions in ordering Falkenstein’s tree to be trimmed while Falkenstein was on vacation reveal Wilen’s disregard for Falkenstein’s right to maintain his property in the way he saw fit.  The jury was free to discredit Wilen’s protestations that no harm was intended.  
See Twyman v. Twyman
, 855 S.W.2d 619, 623 (Tex. 1993) (stating that juries are free to discredit the defendant’s protestations that no harm was intended and to draw necessary inferences to establish intent).  Additionally, the jury could have discredited Wilen’s testimony that he assumed TLS Landscaping had permission to trim the tree as not plausible because when Story arrived, he went to Wilen’s house, not to Falkenstein’s.  And Story did not ask if Wilen knew which of 
Falkenstein’s
 trees he was supposed to trim, as he would have done if he had obtained Falkenstein’s permission to trim his trees.  Nor 
did Story give any indication that Falkenstein had requested TLS Landscaping to trim the view-blocking tree.  Instead, Story reported to Wilen’s home to perform whatever work Wilen requested, and when Wilen said that he wanted a tree trimmed, Story asked which tree and how much.  Wilen pointed out Falkenstein’s tree and indicated that five feet should be cut off the top of the tree.  This evidence is sufficient to permit the jury to find that the conduct of Wilen, through his use of TLS Landscaping, constituted a specific intent to cause substantial injury to Falkenstein.
(footnote: 1)  We hold that the jury’s finding that the harm to Falkenstein resulted from Wilen’s malicious trespass is supported by clear and convincing evidence.  
See
 Act of April 6, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Law 108, 110 (amended 2003) (current version at
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.003(a)(2), (b) (Vernon Supp. 2005); 
see also Green Tree Acceptance of Tex., Inc.
, 1998 WL 337755, at *6 (holding that clear and convincing evidence existed to prove that Green Tree’s trespass was committed with wanton, malicious, or evil intent).

Wilen relies on 
Terrace Land Co. v. Am. Refuse, Inc.
, No. 01-00-00393-CV, 2002 WL 827438, at *11 (Tex. App.—Houston [1st Dist.] Apr. 30, 2002, pet. denied) (not designated for publication), for the proposition that his conduct does not support an award of exemplary damages.  But in 
Terrace Land Co.
, “[t]he record contain[ed] no evidence of ill-will, spite, or a specific intent on the part of defendants to cause substantial injury to Terrace.”  
Id
.  Instead, in 
Terrace Land Co.
, the defendants were attempting to repair a cinder block wall.  
Id.  
Here, the testimony—that Wilen knew Falkenstein did not want Wilen’s tree service to trim his tree, that Wilen knew Falkenstein was out of town on vacation, and that Wilen knew Falkenstein wanted to take care of his own trees, but nonetheless directed his tree service to enter Falkenstein’s property and cut five feet off a tree that was obstructing Wilen’s view—is evidence of ill-will, spite, and a specific intent on the part of Wilen to cause substantial injury to Falkenstein.  Thus, 
Terrace Land Co. 
is not controlling.
 
b. Amount of Exemplary Damages

Also in his second issue, Wilen argues that the exemplary damages award is excessive.  We review the alleged excessiveness of an exemplary damages award under state law as a factual sufficiency challenge.  
Mar. Overseas Corp.
, 971 S.W.2d at 406
; 
Citizens Nat’l Bank v. Allen Rae Invs., Inc.
, 142 S.W.3d 459, 484, 491 n.52 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh’g).  We may only reverse if the exemplary damages award is so against the great weight and preponderance of the evidence as to be manifestly unjust.  
Transp. Ins. Co. v. Moriel
, 879 S.W.2d 10, 31 (Tex. 1994); 
Citizens Nat’l Bank
, 142 S.W.3d at 484, 491 n.53.

We begin by noting that the jury’s award of $18,000.00 in exemplary damages is less than $200,000.00 and is therefore within the statutory exemplary damages cap.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.008(b) (Vernon Supp. 2005) (capping exemplary damages at the greater of (1) two times the amount of economic damages plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000.00 or (2) $200,000.00).  Factors we consider in determining the reasonableness of a capped award include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, (5) the extent to which the conduct offends a public sense of justice and impropriety, and (6) the net worth of the defendant.  
Id.
 § 41.011(a) (Vernon 1997).  The amount of exemplary damages rests largely in the discretion of the jury and should not be disturbed unless the damages are so large as to indicate that they are the result of passion, prejudice, or corruption.  
La. Pac. Corp. v. Smith
, 553 S.W.2d 771, 777 (Tex. Civ. App.—Tyler 1977, no writ).  

Here, evidence existed from which the jury could have found that Wilen intentionally disregarded the wishes of his neighbor, Falkenstein.  Falkenstein wanted to care for his own trees.  Wilen wanted his neighbor’s tree to be trimmed back drastically because it blocked Wilen’s balcony view of the clubhouse.  When Falkenstein rebuffed Wilen’s offers to pay to have the tree trimmed, Wilen took matters into his own hands.  He directed TLS Landscaping to enter Falkenstein’s property and to trim five feet off the top of the tree while his neighbor was vacationing.  Despite Story’s warning that “topping” the tree was inappropriate and abnormal, Wilen proceeded, disregarding Falkenstein’s superior property rights and Story’s warning and subjecting his neighbor’s property to his own wishes.  Evidence further revealed that Wilen had a net worth of over $496,000.00, not including his home and the other assets he owned jointly with his wife.  The character of Wilen’s conduct, his degree of culpability, the situation and sensibility of the parties involved, and a public sense of justice, as well as Wilen’s significant net worth, support the award of $18,000.00 in exemplary damages.  We overrule the remainder of Wilen’s second issue.

IV.  Charge Error

A. Definition of Trespass

In his fourth issue, Wilen contends that the trial court erred by denying his request to include the word “knowingly” in the charge’s definition of “trespass.”  
When a party complains about the trial court's refusal to submit a requested instruction or definition, the question on review is whether the requested charge was reasonably necessary to enable the jury to render a proper verdict.  
See
 
Tex. R. Civ. P.
 277; 
Tex. Workers' Comp. Ins. Fund v. Mandlbauer
, 34 S.W.3d 909, 
912 (Tex. 2000); 
Vinson & Elkins v. Moran
, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.).
 The court’s charge on trespass stated,

Did John C. Wilen trespass on William Falkenstein’s property?

“Trespass” means to enter on the property of another without having consent of the owner.  Entry upon another’s property need not be in person but may be made by causing or permitting a thing or another person to cross the boundary of the premises.  Any person who [aids], assists, advises, or encourages the commission of the trespass is liable as a trespasser.

Answer “Yes” or “No”

Citing a federal decision from the Second Circuit, Wilen argues that this definition should have included “knowingly” before the phrase “[aids], assists, advises, or encourages.”  
See Pittman v. Grayson
, 149 F.3d 111, 123 (2d
 Cir. 1998), 
cert. denied
, 528 U.S. 818 (1999).  But 
Pittman
 is not binding authority on this court, and it is factually distinguishable from the present facts on many grounds.  
Pittman
 involved a father’s suit against Icelandair for permitting a mother to fly their child to Iceland when the father was the child’s managing conservator.  In holding the airline not liable, the court stated, “In order to be liable for acting in concert with the primary tortfeasor under either theory, the defendant must know the wrongful nature of the primary actor's conduct.”  
Id
.  Wilen interprets this sentence as requiring the definition of trespass in this case to instruct the jury that he must 
know
 of the wrongful nature of TLS Landscaping’s conduct.  That is, that he must have 
knowingly
 aided, assisted, advised, or encouraged the commission of  TLS Landscaping’s trespass.  Here, however, Wilen—not TLS Landscaping—is the primary tortfeasor.  And Wilen knew of the wrongful nature of his own conduct when he directed the tree trimming service to access Falkenstein’s property and to trim a tree on Falkenstein’s property.
(footnote: 2)  
Thus, 
Pittman
 supports the proposition that to hold TLS Landscaping liable for the trespass, it must have known of the wrongful nature of Wilen’s conduct, not vice versa.  
Pittman
 is not applicable. 

We have located no Texas case, and Wilen has cited none, that requires the agency definition of trespass provided by the trial court to include the word “knowingly.”  The case law appears to the contrary.  
See generally Watson
, 918 S.W.2d at 646 (holding trial court erred by refusing to submit trespass definition consisting of “entry upon another’s property need not be in person but may be made 
by causing or permitting 
a thing to cross the boundary of the premises.  Every unauthorized entry upon land of another is a trespass and the intent or motive prompting the trespass is immaterial.”) (emphasis added);
 Nixon v. Sipes
, 667 S.W.2d 223, 224 (Tex. App.—Texarkana 1984, writ ref’d n.r.e.) (focusing on intent to enter as relevant intent); 
Frick v. Int’l & G.N. Ry. Co.
, 207 S.W. 198, 199-200 (Tex. Civ. App.—San Antonio 1918, writ ref’d) (same).

The trial court’s definition of “trespass” is correct because it is consistent with case law holding that the only relevant intent is that of the actor to enter the property or to aid, assist, advise, or encourage another to enter the property; it assisted the jury, accurately stated the law, and is supported by the pleadings and evidence.  
See Cowan
, 945 S.W.2d at 827.  
And finally, Wilen points to no evidence that his 
aid to, assistance to, advisement of, or encouragement of TLS Landscaping in entering Falkenstein’s property to trim the view-blocking tree was not knowing.  Although Wilen testified that he “assumed” that TLS Landscaping had permission to enter Falkenstein’s property, Wilen offered no evidence of Falkenstein’s consent, of a mistake or misunderstanding between the two, or that he unknowingly aided, assisted, advised, or encouraged the commission of the trespass.  Thus, Wilen’s request that the trial court insert the word “knowingly” into the definition of “trespass” is not supported by the evidence, 
and the proposed insertion was not reasonably necessary to enable the jury to render a proper verdict.  
We hold that the trial court did not abuse its discretion by overruling Wilen’s objection to the definition of “trespass” in the jury charge.  
See Nixon
, 667 S.W.2d at 224 (stating that form of definitions rests within sound discretion of trial court and holding that trial court did not err by submitting a correct definition of trespasser).  We overrule Wilen’s fourth issue.

B. Question Regarding Amount of Exemplary Damages

In his sixth issue, Wilen claims that the trial court erred by listing attorney’s fees as one of the items that the jury could consider in determining the amount of any exemplary damage award.  But in the trial court, Wilen did not object on this basis to Question 4, the question asking the jury what amount, if any, of exemplary damages should be awarded to Falkenstein and listing the factors the jury could consider.  Accordingly, this complaint is not preserved for our review.  
See
 
Tex. R. Civ. P.
 274; 
Tex. R. App. P.
 33.1; 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g);
 State Farm Fire & Cas. Co. v. Gros
, 818 S.W.2d 908, 916 (Tex. App.—Austin 1991, no writ).  We overrule Wilen’s sixth issue.   

C. Attorney’s Fees Question

In his third, seventh, and eighth issues, Wilen argues that the trial court erred by overruling his objections to jury charge questions on attorney’s fees and by entering judgment on the jury’s determination of attorney’s fees because attorney’s fees are not recoverable in this case.  Falkenstein contends that he is entitled to attorney’s fees based on equity because the evidence supports a finding that Wilen acted in bad faith and because he pleaded for recovery of attorney’s fees “based upon equitable principles.”  

To recover attorney’s fees, a party must prove entitlement by contract or statute.  
Holland v. Wal-Mart Stores, Inc.
, 1 S.W.3d 91, 95 (Tex. 1999).  Generally, attorney’s fees are not recoverable in an action for tort.  
See
 
New Amsterdam Cas. Co. v. Tex. Indus., Inc.
, 414 S.W.2d 914, 915 (Tex. 1967); 
see also
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001(8) (Vernon 1997).  Falkenstein relies upon an Austin Court of Appeals’ case recognizing two exceptions to the general rule that attorney’s fees cannot be recovered as damages.  
Qwest Commc’ns Int’l, Inc. v. A T & T Corp.
, 114 S.W.3d 15, 32-33 (Tex. App.—Austin 2003), 
rev’d in part on other grounds
, 167 S.W.3d 324 (Tex. 2005).  The first exception applies “where the defendant’s tort requires the plaintiff to act in the protection of his interests by bringing or defending an action against a third party,” and in that case, “the plaintiff ‘is entitled to recover compensation for the reasonably necessary loss of time, attorney fees[,] and other expenditures thereby suffered or incurred.’” 
 
Id. 
at 33 (quoting 
McCall v. Tana Oil & Gas Corp.
, 82 S.W.3d 337, 344 (Tex. App.—Austin 2001), 
rev’d on other grounds
, 104 S.W.3d 80 (Tex. 2003)).  The second exception “permits recovery of damages measured by attorney’s fees when the defendant ‘has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.’” 
 Id.
 (quoting 
McCall
, 82 S.W.3d at 345).  The supreme court, however, reversed this holding in 
McCall
, concluding that 
recovery of attorney’s fees for these reasons should be pursued under rule of civil procedure 13, not as actual damages.  
See Tana Oil & Gas Corp.
, 104 S.W.3d at 83.

Falkenstein’s action was not founded on the interpretation of a contract, and attorney’s fees were not authorized by statute.  
See Pargas of Longview, Inc. v. Jones
, 573 S.W.2d 571, 574 (Tex. Civ. App.—Texarkana 1978, no writ) (holding award of attorney’s fees is not authorized in suits for trespass).  Likewise, the first exception recognized in the 
Qwest
 case and relied upon by Falkenstein does not apply because Falkenstein did not sue a third party.  And as we noted, the second exception recognized by the 
Qwest
 court was overruled by the supreme court.  
Tana Oil & Gas Corp.
, 104 S.W.3d at 83. Because Falkenstein did not seek recovery of his attorney’s fees as a sanction and because attorney’s fees are not authorized by statute or contract in this case, we hold that the trial court erred by submitting questions to the jury regarding attorney’s fees and by entering judgment on the jury’s finding awarding Falkenstein attorney’s fees of $29,700.00.  We sustain Wilen’s third, seventh, and eighth issues.

D. Malice Question

Because we have held that sufficient evidence exists to support the jury’s finding of malice, we overrule Wilen’s fifth issue contending that the trial court erred by overruling Wilen’s no-evidence objections to the malice jury question.

V.  Conclusion

Having sustained Wilen’s 
third, seventh, and eighth issues
, we modify  the judgment by deleting the award of attorney’s fees 
to Falkenstein.  
See
 
Tex. R. App. P.
 43.2(b); 
Amerman v. Martin
, 83 S.W.3d 858, 864 (Tex. App.—Texarkana 2002), 
aff’d
, 133 S.W.3d 262 (Tex. 2004).  As modified, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: April 6, 2006

FOOTNOTES
1:
We note that typically a “malice” finding has not been based on a fact-finder’s determination that the defendant possessed the specific intent to cause substantial injury to the plaintiff but instead on the determination that the defendant committed “an act or omission:  (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involve[d] an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor ha[d] actual, subjective awareness of the risk involved, but nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others.”  
See
 Act of April 6, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109 (providing two-part definition of “malice”) (amended 2003) (current version at
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.001(11) (Vernon Supp. 2005).  This distinction is significant because “substantial injury” is a lower standard than “extreme degree of risk.”  That is, when a defendant acts with a specific intent to cause substantial injury to the plaintiff, the injury actually caused need not be as great to support exemplary damages as an injury occurring when the defendant did not specifically intend to cause injury.

2:
Recall that Wilen admitted that he told TLS Landscaping which tree to trim and how much to trim.