**Opinion issued August 29, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00533-CV

_____

**STORM RECONSTRUCTION SERVICES, INC., Appellant**

**V.**

**MARK T. EDDINGSTON, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. 25941**

---

**MEMORANDUM OPINION**

Storm Reconstruction Services, Inc. ("SRS") appeals the judgment following a bench trial rendered in favor of appellee, Mark T. Eddingston, in his suit for trespass to real property. In three issues, SRS contends that the trial court

erred because (1) SRS was privileged or lawfully authorized to enter Eddingston's property; (2) SRS is not liable for trespass in the absence of willful misconduct, gross negligence, or bad faith; and (3) the evidence presented at trial does not support the trial court's judgment. We affirm.

## Background

On October 12, 2010, Eddingston sued SRS for trespass to real property. Following a bench trial, the court found in favor of Eddingston and awarded him $23,973.33 in compensatory damages and $2,493.22 in prejudgment interest.

### 1. Eddingston's Testimony

Eddingston testified as to his ownership of his 335 acres of land in Chambers County that he uses for grazing, recreation, hunting, and fishing on the bayou abutting the property. He also occasionally leased it to rice farmers.

On January 13, 2010, he discovered that a heavy piece of equipment had entered his property, knocked down a fence, collapsed two culverts, and created deep ruts in the surface of the road. There were trackhoe marks near the downed fence and on the damaged road. He contacted the Trinity Bay Conservation District regarding the damage and was told to call Bob Jones with SRS and Tommy Webster with Beck Disaster Recovery ("BDR").[1]

---

[1] BDR, a monitoring firm for the Texas Department of Transportation ("TxDoT"), was responsible for monitoring SRS's post-Hurricane Ike debris removal,

2

Eddingston testified that Webster told him that he would go see the damage and "was going to get with SRS and have them go back down there." Eddingston understood this to mean that SRS was the responsible party and SRS would repair the road. When Eddingston later spoke with Jerry Hicks, the SRS employee sent to make the repairs, Hicks initially stated that there had only been one red five-ton crawler on Eddingston's property but when told that his game camera had photographed a yellow trackhoe on the property sometime in January or February 2010, Hicks acknowledged that there may have been a yellow crawler on the property as well. Eddingston testified that he never consented to SRS or any of its employees to enter his property.

Although SRS attempted to repair the damaged road on at least two occasions, it remained impassable due to the ruts and standing water. After receiving no further response from SRS regarding repairs, Eddingston hired Keith Burkart to repair the road and the collapsed culverts.

### 2. Keith Burkart's Testimony

Eddingston hired Burkart's company, CK Backhoe Service, in March 2010, to repair the damage to his road and culverts. Burkart testified that he believed a heavy load had broken the culverts and "blown out" the road, causing one side of it to be level with the bottom of the ditch. Burkart reshaped and repaired the road

---

quantifying the material removed, and then reporting to TxDoT which then paid SRS for the work performed.

with crushed rock and installed new culverts which, Burkart testified, were necessary to return Eddingston's property to its former condition.

### 3. Wayne McKey's Testimony

McKey, a general engineering technician with TxDoT who worked with SRS following Hurricanes Rita and Ike, testified that after BDR, TxDoT's monitoring firm, reported the quantities of Hurricane Ike debris removed by SRS, he would pay SRS based on that information. After McKey became aware of Eddingston's reported property damage, he accompanied Webster, BDR's project lead, and Hicks to witness the second repair attempt by SRS. He testified that the repairs included levelling and smoothing the road and filling the ruts with dirt. McKey testified that his role was not to approve the repairs but simply to confirm that they had been made. He noted that he had not personally received permission from Eddingston to enter his property but that it was BDR's responsibility to identify property owners and obtain rights of entry.

### 4. Mark Garrison's Testimony

Garrison, SRS's Vice President of Operations during the time period relevant to this suit, testified that SRS had eight trackhoes working on the bayou near Eddingston's property. He acknowledged that the two trackhoes shown in the game camera photos looked like equipment that belonged to SRS and that, to his knowledge, they were on Eddingston's property. He also acknowledged that

4

photos of the downed fence showed trackhoe tracks. Garrison claimed that SRS was possessed of a "blanket right of entry that was signed by Judge Sylvia that covered any emergencies or any situations where they couldn't find a landowner or anything like that." He testified that SRS worked at the direction of BDR, and that BDR was responsible for obtaining licenses, permits, and rights of entry.

### 5. Jerry Hicks's Testimony

Hicks, a foreman for SRS in 2009 and 2010, testified that he spoke with Eddingston about the damage to his road but denied admitting to Eddingston that SRS had caused the damage.

## Standard of Review

When, as here, a party appealing from a non-jury trial does not request findings of fact and conclusions of law, the appellate court presumes the trial court found all fact questions in support of its judgment, and the reviewing court must affirm the judgment on any legal theory finding support in the pleadings and evidence. *See Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *George v. Jeppeson*, 238 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Shaw v. Cnty. of Dallas,* 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). Further, we consider only the

evidence most favorable to the implied factual findings and disregard all opposing or contradictory evidence. *See Franklin v. Donoho*, 774 S.W.2d 308, 311 (Tex. App.—Austin 1989, no writ).

## Discussion

SRS's first issue contends that it is not liable for trespass because it was privileged, or had lawful authority, to enter onto Eddingston's property. In its second issue, SRS argues that it is not liable for trespass in the absence of evidence demonstrating willful misconduct, gross negligence, or bad faith. Eddingston asserts that SRS adduced no evidence at trial to support either argument.

SRS first asserts that "a person is privileged to enter onto another's land when such action appears reasonably necessary to prevent serious harm to the actor, the owner of the land, or a third person, or to the real or personal property of any such person." SRS fails to provide this Court with citation to the record supporting its argument that its entry onto Eddingston's land in January 2010 was reasonably necessary to prevent serious harm to a person or to property. Its argument that it acted under lawful authority is equally unavailing in that the record reveals no evidence showing that SRS entered onto Eddingston's land pursuant to any lawful authority. *See* TEX. R. APP. P. 38.1(i). Indeed, Eddingston's testimony was that he never gave permission for SRS or any of its employees to enter his property. Although Garrison testified that another judge had signed a

6

"blanket right of entry . . . covering any emergencies or situations where they couldn't find a landowner," SRS offered no evidence of this document or its applicability to Eddingston.

SRS next contends that it is not liable for the damage to Eddingston's property absent a showing of willful misconduct, gross negligence, or bad faith and SRS cites to Texas Government Code section 418.023, which provides, in relevant part:

> (a) Through the use of any state agency or instrumentality, the governor, acting through members of the Emergency Management Council, may clear or remove debris or wreckage from public or private land or water if it threatens public health or safety or public or private property in a state of disaster declared by the governor or major disaster declared by the president of the United States.
>
> . . . .
>
> (d) If the governor provides for clearance of debris or wreckage under this chapter, state employees or other individuals acting by authority of the governor may enter on private land or water to perform tasks necessary to the removal or clearance operation. Except in cases of wilful misconduct, gross negligence, or bad faith, a state employee or agent performing his duties while complying with orders of the governor issued under this chapter is not liable for the death of or injury to a person or for damage to property.

TEX. GOV'T CODE ANN. § 418.023(a), (d) (West 2012). A review of the record, however, reveals no evidence demonstrating that a disaster declaration or state of emergency existed by appropriate executive order or that SRS was acting pursuant to such authority fifteen to sixteen months after Hurricane Ike came ashore. We

7

find SRS's argument based on section 418.023(d) unavailing. SRS's first and second issues are overruled.

SRS's third issue contends that the trial court's finding that it committed trespass is unsupported by the evidence.

Trespass occurs when a person enters another's land without consent. *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882 (Tex. App.—El Paso 2011, no pet.); *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex. App.—Fort Worth 2006, pet. denied). A plaintiff must prove that (1) he owns or has a lawful right to possess real property, (2) the defendant entered the land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury. *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 882; *Wilen*, 191 S.W.3d at 798.

Eddingston argues that the evidence is sufficient to support all of the elements necessary to establish a trespass to real property.

With regard to the first element, it is undisputed that Eddingston owned the property in question. As to the second element, Hicks, an SRS foreman, admitted to Eddingston that two of SRS's trackhoes had entered onto Eddingston's property. Garrison, SRS's former Vice President of Operations, testified that the trackhoes shown in Plaintiff's Exhibits 3 and 4 looked like equipment that belonged to SRS, and that Plaintiff's Exhibits 6 through 8 showed trackhoe marks next to the

8

downed fence.  *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex. 1997) (concluding that intent relevant to trespass action is only defendant's intent to enter property; motive is irrelevant).  This evidence is sufficient to support an implied finding that SRS's entry onto Eddingston's property was physical, intentional, and voluntary.

As to the third element, to make the road passable again and to restore drainage, the roadway had to be repaired and the broken culverts replaced. Eddingston paid Burkart $23,973.33 to restore his property to its former condition. *See Vaughn v. Drennon*, 372 S.W.3d 726, 738 (Tex. App.—Tyler 2012, no pet.) (noting measure of damages for trespass to real property is ordinarily cost and expense of restoring land to its former condition, plus loss or damages occasioned by being deprived of use of same, with interest).  This evidence is sufficient to support the trial court's implied finding that SRS's entry caused damage to Eddingston's property.

Considering only the evidence most favorable to the implied factual findings and disregarding all opposing or contradictory evidence, we conclude that there was sufficient evidence to support the trial court's conclusion that SRS trespassed onto Eddingston's property.  We overrule SRS's third issue.[2]

---

[2]      In its reply brief, SRS argues that the evidence does not support the damages awarded in the judgment.  However, we decline to address this argument because SRS cannot raise new issues for the first time on appeal in its reply brief.  *See*

**Judgment**

We affirm the trial court's judgment.


Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

---

*Crowder v. Scheirman*, 186 S.W.3d 116, 119 fn.1 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).