

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-12-00158-CV

**DON C. RUSSELL AND**
**WYNETTE M. RUSSELL,**

                                                    **Appellants**

 v.

**ROBERT B. COWARD AND**
**COWARD LAND, L.P.,**

                                                    **Appellees**

_____

### From the 52nd District Court
### Coryell County, Texas
### Trial Court No. CAC-09-38903

_____

## MEMORANDUM OPINION

_____

Don and Wynette Russell (the Russells) and Robert B. Coward and Coward Land, LP (Coward) own adjacent property in rural Coryell County. Coward incorrectly assumed that the fence line was the property line, and when, in April 2007, he lost a couple of calves, he decided to replace part of the old fence. Without first discussing it with the Russells, Coward instructed his son to use a bulldozer to take down around

1,100 feet of the fence, along with all of the trees and vegetation along the fence row, so that they could put up a new fence.

On April 21, 2007, Don Russell discovered that a big section of the fence was gone and that all the trees that had been there were in six or seven piles on Coward's property. A surveyor later determined that the fence line encroached on the Russells' property a total of 1.71 acres.

The Russells sued Coward, initially asserting claims for trespass and declaratory judgment as to the boundary line. When Coward pleaded counterclaims for adverse possession and to quiet title and for trespass to try title, the Russells added a claim for trespass to try title.

After a bench trial, the trial court rendered judgment that the Russells had a superior right to title and possession of the 1.71 acres of property and that Coward was guilty of civil trespass, but that the Russells were not entitled to actual or exemplary damages. The trial court later made findings of facts and conclusions of law. The significant findings for this appeal are that Coward's trespass "caused no damages to Plaintiffs" and that the "intrinsic dollar value of the vegetation removed by the Defendants was zero ($0.00)." And based on its conclusion that the suit was properly characterized as a trespass-to-try-title action, not a declaratory-judgment action, the trial court found that the Russells were not entitled to recovery of attorney's fees.

Asserting two general issues, each having numerous sub-issues, the Russells appeal. The first issue generally complains about the trial court's failure to award trespass damages. Specifically, their primary complaints are that they conclusively

established trespass damages in the amount of $72,971 and that the zero damages award is against the great weight of the evidence.

We review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the party that had the burden of proof at trial complains on appeal of the legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing the jury's verdict for the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005).

"To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). "A person likewise trespasses when he intentionally causes a third person to enter land in the possession of another." *Id.*

The Texas Supreme Court recently articulated the contours of recoverable damages for a landowner for the destruction of trees on his property. *See Gilbert*

*Wheeler, Inc. v. Enbridge Pipelines (East Texas), L.P.,* --- S.W.3d ---, 2014 WL 4252273 (Tex. Aug. 29, 2014). The court first focused "on the significance of classifying injury to real property as temporary or permanent in the context of properly compensating the injured landowner." *Id.,* --- S.W.3d at ---, 2014 WL 4252273, at *3.

> [T]he general rule in cases involving injury to real property is that the proper measure of damages is the cost to restore or replace, plus loss of use for temporary injury, and loss in fair market value for permanent injury. However, we apply this rule with some flexibility, considering the circumstances of each case to ensure that an award of damages neither over- nor under-compensates a landowner for damage to his property. We maintain that the purpose of the law "in every case, is to compensate the owner for the injury received, and the measure of damages which will accomplish this in a given case ought to be adopted." *Pac. Express Co. v. Lasker Real-Estate Ass'n,* 81 Tex. 81, 16 S.W. 792, 793 (1891). For that reason, Texas courts have appealed to a number of exceptions to the general rule when it would compensate a landowner unjustly. Two of those exceptions are at issue in this case.
>
> In cases involving temporary injury, Texas courts have recognized the so-called economic feasibility exception to the general rule that the cost to restore is the proper measure of damages. This exception applies when the cost of required repairs or restoration exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible. In those circumstances a temporary injury is deemed permanent, and damages are awarded for loss in fair market value.

*Id.,* --- S.W.3d at ---, 2014 WL 4252273, at *5.

The court then discussed the intrinsic-value-of-trees exception, which guides our resolution of this appeal.

> In cases involving real property injured by the destruction of trees, even when the proper measure of damages is the loss in the fair market value of the property to which the trees were attached, and the value of the land has not declined, we have held that the injured party may nevertheless recover for the trees' intrinsic value. This exception was created to compensate landowners for the loss of the aesthetic and

utilitarian value that trees confer on real property. In *Porras v. Craig*, a landowner sued his neighbor for cutting down trees on his property, some as large as four feet in diameter. 675 S.W.2d 503, 504 (Tex. 1984). The parties agreed that the damage to the land was permanent, and we noted that the usual measure of damages for permanent injury to real property is "the difference in the market value of the land immediately before and immediately after" the injury occurs. *Id.* However, we observed that Texas courts of appeals had begun to apply "a conditional measure of damages, ... contingent on a showing of no reduction in market value," which compensated landowners for the intrinsic value of the trees that were destroyed. *Id.* at 506. We recognized the exception and remanded the case for a new trial in the interest of justice. *Id.*

We recently revisited this exception in *Strickland v. Medlen*. 397 S.W.3d 184 (Tex. 2013). In that case, we considered whether pet owners could recover noneconomic damages for the negligent loss of their dog. *Id.* at 185. We concluded that they could not, as more than a century of case law has classified pets as personal property. *Id.* (citing *Heiligmann v. Rose,* 81 Tex. 222, 16 S.W. 931, 932 (1891). Ultimately, we held that the plaintiffs could recover only the objective, economic value of their pet. *Id.* at 198. In arriving at this conclusion, we distinguished *Porras*. We explained that *Porras* presented no obstacle to the result in *Strickland* because a tree's intrinsic value is not "rooted in an owner's subjective emotions," nor does it encompass the tree's "sentimental value" to its owner. *Id.* at 190. Rather, the intrinsic value of a tree lies in "its ornamental (aesthetic) value and its utility (shade) value." *Id*. (citing *Porras,* 675 S.W.2d at 506). We also do not rule out other elements of objective value to the extent an expert lays a proper predicate.

Applying *Strickland*, we confirm and clarify this exception to the general rule governing damages for permanent injury to real property. Specifically, we affirm that when a landowner can show that the destruction of trees on real property resulted in no diminishment of the property's fair market value, or in so little diminishment of that value that the loss is essentially nominal, the landowner may recover the intrinsic value of the trees lost; that is, the ornamental and utilitarian value of the trees.

*Id.,* --- S.W.3d at ---, 2014 WL 4252273, at *6-7.

Hal Dunn, a real-estate broker and certified real-estate appraiser, testified that, in

his opinion, the fair-market value of the Russells' property had not depreciated by

Coward's removal of the Russells' trees and vegetation along the fence line. Coward also opined that the tree removal did not change the value of the Russells' property. The Russells have not contended that Coward's removal of the Russells' trees and vegetation diminished their property's value, nor did they present any evidence in that respect.

The Russells did present expert testimony from Greg David, an arborist, on tree valuation. David testified that, based on his review of photographs, tree roots, and resprouting, the trees and vegetation that were bulldozed were escarpment live oak, cedar elm, cedar, Texas red oak, red bud, Mexican buckeye, and Texas sumac. Using the cost-to-cure method to calculate the cost of replacing the trees and shrubs, David testified to a total cost-to-cure amount of $72,971.

In post-submission briefing, Coward correctly notes that, based on *Gilbert Wheeler*, the Russells cannot recover restoration damages. *See id.*

> Under these circumstances, when restoration of the land is technically possible but exceeds the diminution in market value to such a disproportionately high degree that the repairs are no longer economically feasible, the injury is deemed permanent. … Because the injury is deemed permanent, however, the trial court improperly instructed the jury to calculate damages based on the cost to restore the property.

*Id.,* --- S.W.3d at ---, 2014 WL 4252273, at *8.

Accordingly, we overrule sub-issues 1(b) and 1(d), which assert that the evidence conclusively established trespass damages in the amount of $72,971. We also overrule sub-issue 1(f), which asserts that the evidence conclusively established that the intrinsic value of the trees and shrubs was $72,971; that amount was based only on evidence of

the restoration cost, which is not recoverable.  It was not based on intrinsic-value evidence.

But under *Gilbert Wheeler*, plainly the Russells may recover the intrinsic value of the destroyed trees and vegetation.  We next consider the Russells' "against the great weight" sub-issues on the trial court's failure to award any damages for the intrinsic value of the destroyed trees and vegetation and the trial court's zero-damages finding on intrinsic value.

> When a party who had the burden of proof complains of the factual insufficiency of an adverse finding, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chemical*, 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651-53 (Tex. 1988).  We weigh all the evidence and set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.  *Dow Chemical*, 46 S.W.3d at 242.

> In doing so, we must detail the evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the adverse finding.  *Id.*  We must also remember that it is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony.  *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 725-26 (Tex. App.—Waco 1998, pet. denied).  The trier of fact may believe one witness and disbelieve another.  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).  It may resolve inconsistencies in the testimony of a witness, and it may accept lay testimony over that of experts.  *Id.*  We may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986)).

*O'Connor v. Wilson*, 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied).

As the supreme court noted, the intrinsic-value "exception was created to compensate landowners for the loss of the aesthetic and utilitarian value that trees

confer on real property." *Gilbert Wheeler*, --- S.W.3d at ---, 2014 WL 4252273, at *6. The court explained that "the intrinsic value of a tree lies in 'its ornamental (aesthetic) value and its utility (shade) value,' " *id.,* --- S.W.3d at ---, 2014 WL 4252273, at *7 (quoting *Strickland,* 397 S.W.3d at 190), and did "not rule out other elements of objective value to the extent an expert lays a proper predicate." *Id.*

There was no testimony that the intrinsic value of the Russells' destroyed trees and vegetation was zero or that it lacked any intrinsic value. Coward implicitly admits that the Russells presented intrinsic-value evidence, but characterizes it as "very little," "slight," and "paltry." We disagree with those characterizations.

Don Russell testified that some of the destroyed trees "could easily be a hundred years old." He said that because of how the trees had grown up in the fence, they had become "like a hedgerow in Germany." According to Coward's journal, the height of the cedars was approximately twenty feet. Don Russell testified that the "hedgerow" served several purposes, such as serving as a barrier to windborne thistle seeds from Coward's land; he presented a photograph of a patch of thistle now on his land, described them as "noxious," and said that cattle cannot eat them or graze around them. He also said that the hedgerow provided some protection from deer hunters on Coward's land.

In addition to testifying about the various types of trees, David, the arborist, testified that the function of the trees was as a buffer or screen between the two properties. He said that they also were a wildlife habitat and were "an attractive growth of trees along the roadway and along that fence." Coward testified that Don

Russell's first comment to him was that he had destroyed all of the Russells' "beautiful trees." And the Russells point out that Coward's expert Dunn, a real-estate broker and certified real-estate appraiser, testified that "there's a good tree canopy that still remains," which the Russells assert is an implicit acknowledgment that the destroyed tree canopy on the other side of the road was also good. The Russells also point to David's report, which contains a 2005 aerial photograph depicting the tree canopy that Coward bulldozed.

"Courts have gone to great lengths to hold trespassers liable for the consequences of their acts." *Wilen*, 191 S.W.3d at 799 (citing *Rochelle v. Carr*, 418 S.W.2d 710, 712 (Tex. Civ. App.—San Antonio 1967, no writ)). In *Wilen*, a trespass case, the court affirmed a jury award of $5,300 in actual damages for the intrinsic value of one tree. *Id.* In doing so, the court noted damage awards for the intrinsic value of trees in other cases: *Lamar County Elec. Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 922-23 (Tex. App.—Texarkana 1989, no writ) (upholding jury's finding of intrinsic value and award of $2,500.00 in actual damages), *overruled on other grounds by Gilbert Wheeler*, --- S.W.3d at ---, 2014 WL 4252273, at *9; *Garey Constr. Co. v. Thompson*, 697 S.W.2d 865, 867 (Tex. App.—Austin 1985, no writ) (upholding $1,500.00 actual damage award for intrinsic value of several shrubs and twelve-inch tree damaged by trespass), *overruled on other grounds by Gilbert Wheeler*, --- S.W.3d at ---, 2014 WL 4252273, at *9.

The factfinder has discretion to award damages within the range of evidence, so long as a rational basis exists for its calculation. *Examination Management Servs., Inc. v. Kersh Risk Management, Inc.*, 367 S.W.3d 835, 844 (Tex. App.—Dallas 2012, no pet.);

*Shearer's Inc. v. Lyall*, 717 S.W.2d 128, 130 (Tex. App.—Houston [14th Dist.] 1986, no writ). "The trier of fact may not, however, ignore the uncontroverted facts and arbitrarily fix an amount neither authorized nor supported by the evidence." *Lyall*, 717 S.W.2d at 130.

Here, the uncontroverted facts show that Coward bulldozed an approximately 1,100-foot "hedgerow" of trees and vegetation. David's report, which contains the 2005 aerial photograph, also has a 2008 aerial photograph, and they demonstrate a before-and-after depiction of the amount of trees and vegetation that were bulldozed. The Russells also presented photographs of the various piles of the bulldozed trees and vegetation.

Despite trying the case primarily to recover restoration costs based on their expert's cost-to-cure evidence, the Russells still adduced the not insignificant intrinsic-value evidence detailed above, and there is no controverting evidence that supports the trial court's zero damages finding on intrinsic value. In light of the entire record, we agree with the Russells that the trial court's finding of *zero* damages for intrinsic value is against the great weight and preponderance of the evidence. Accordingly, we sustain sub-issues 1(c), 1(e), and 1(g). Given this ruling, we need not address sub-issues 1(a) and 1(h).

Having sustained sub-issues 1(c), 1(e), and 1(g) on the trial court's zero damages finding on intrinsic value, we reverse the trial court's judgment and remand this case for a new trial. Because of our remand, we need not address the second issue on attorney's fees.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and remanded
Opinion delivered and filed October 9, 2014
[CV06]

