In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-20-00292-CV

OHAH, LTD., D/B/A OAK HAVEN APARTMENT HOMES, Appellant

V.

LNG BUILDERS, LLC, ODOM TEXAS DEVELOPMENT, LLC,
AND THE CITY OF SHENANDOAH, Appellees

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 18-09-12429-CV

**MEMORANDUM OPINION**

Appellant OHAH, Ltd., d/b/a Oak Haven Apartment Homes (Oak Haven) appeals the trial court's final judgment granting a summary judgment in favor of Appellees LNG Builders, LLC (LNG) and Odom Texas Development, LLC (OTD) as Defendants and in favor of the City of Shenandoah (the City) as Intervenor, in a

dispute over an easement and drainage line[1] which the defendants built on Oak Haven's property. We vacate the trial court's judgment in part, we reverse the trial court's judgment in part, and we remand the matter to the trial court for further proceedings.

## Background[2]

Oak Haven provides apartment homes for senior citizens at Oak Haven's property located at 19445 David Memorial Drive (Oak Haven's Property) in Shenandoah, Texas. OTD owns the real property located at 19391 David Memorial Drive (OTD's Property), which is adjacent to one side of Oak Haven's Property. OTD's general contractor, LNG, built a hotel for OTD on OTD's Property. During the construction of the hotel, Oak Haven filed an Original Petition with Application for Temporary Restraining Order, Application for Temporary Injunction, and Application for Permanent Injunction against LNG and OTD (the Defendants). According to the allegations in the petition, the Defendants indicated they intended

---

[1] In this matter the parties have referred to the 24-inch pipeline as a "storm water pipeline," "storm sewer line," "drainage line," and "storm sewer drainage line." It is unclear on the record before us whether the pipeline will function to drain only stormwater or whether it may also act as a sewer line. That said, all the parties seem to agree that the 24-inch pipeline will drain something from OTD's Property, across or through Oak Haven's Property, and into a detention pond. For purposes of consistency, we will refer to the 24-inch pipeline as a "drainage line," which is the initial term used by Oak Haven in its Original Petition.

[2] When possible, we have limited our discussion to the pleadings, procedural information, and factual allegations relevant to our disposition.

to construct a 24-inch drainage line from OTD's Property and across or through Oak Haven's Property to connect the hotel's storm sewer drainage to a nearby detention pond owned by the City of Shenandoah, and Oak Haven alleged that the Defendants had no legal right to construct a drainage line on Oak Haven's Property. Oak Haven alleged that the Defendants had already trespassed on Oak Haven's Property at least on three occasions: once to place some wooden stakes, once to destroy Oak Haven's fence, and once to place netting on Oak Haven's land. Oak Haven alleged that it made a demand on LNG to cease, desist, and refrain from trespassing on Oak Haven's Property, but LNG ignored the demand and continued to trespass on Oak Haven's Property. According to Oak Haven's petition, if the Defendants were not enjoined from trespassing on Oak Haven's Property, Oak Haven would suffer immediate and irreparable harm for which Oak Haven would have no adequate remedy at law.

Oak Haven included claims against the Defendants for trespass, requested a TRO to order the Defendants to refrain from entering upon Oak Haven's Property until the trial court could hear Oak Haven's Application for Temporary Injunction Pendente Lite, requested that the trial court issue a temporary injunction to order Defendants to refrain from entering Oak Haven's Property until the trial court could hear Oak Haven's Application for Permanent Injunction, and requested that the trial court issue a permanent injunction for the Defendants to refrain from entering Oak

3

Haven's Property permanently. Oak Haven sought monetary damages in excess of $500 but under $100,000, and Oak Haven attached an affidavit of its Chief Financial Officer in support of its petition.

Oak Haven obtained an Ex-Parte Temporary Restraining Order against the Defendants. In response, Defendants answered and raised the following defenses, alleging that: (1) Oak Haven has no probable right of recovery and no legal right to injunctive relief because Defendants have the legal right to construct a drainage line pursuant to the 80-foot utility easement; (2) based on the 80-foot utility easement Defendants are not guilty of trespass; (3) Oak Haven has not demonstrated irreparable harm, probable injury, or that Oak Haven is without an adequate remedy at law; (4) the underground storm sewer construction is necessary and without it would likely cause flooding into Oak Haven's senior living facility; (5) waiver, estoppel, laches, and unclean hands bar the claims; and (6) the requested temporary injunction and related affidavits lack factual specificity and fail to comply with Rule 680 of the Texas Rule of Civil Procedure. Defendants also asserted a counterclaim, alleging Oak Haven wrongfully obtained the temporary restraining order.

The City intervened and filed a third-party claim against Oak Haven. The City alleged that it had issued LNG a permit to construct the hotel, and as part of the hotel construction, the City required LNG to provide storm water drainage to protect the City's residents from flooding. According to the City, it owns an 80-foot easement

between the hotel and the detention pond which was dedicated to the City by Oak Haven in May 2000. The City alleged that the dedication was made in a plat from May 2000 (the Plat), recorded in the Real Property Records of Montgomery County, Texas, on or about August 31, 2000. The City alleged that, because it owns[3] an 80-foot easement, the City has the absolute right under the dedication language on the Plat to allow LNG to construct storm water drainage within the easement and the City asserted it is a necessary party to the litigation. The City filed a claim against Oak Haven for tortious interference with an existing contract for Oak Haven's interference with the City's contract with the Defendants to construct storm water drainage in the City's easement, and the City asserted a claim against Oak Haven for violating Chapter 10 of the Civil Practices and Remedies Code, for acting "in bad faith[,]" and for failing to disclose to the trial court that Oak Haven had dedicated an easement to the City. The City sought damages of over $200,000 but not more than $1,000,000 for lost property taxes, hotel occupancy taxes, sales tax and lost alcohol sales, allegedly caused by the delay in construction caused by Oak Haven.

Relying on the Plat, the City alleged that there was a dedication of the "80' U.E." from Senior Housing Development II, LLC (Oak Haven's predecessor in title)

---

[3] The City does not state whether it claims to own an exclusive or nonexclusive easement. In its brief on appeal, the City refers to the 80-foot area solely as an "easement." Additionally, OTD and LNG also refer to the 80-foot area as depicting nothing more than an "easement."

to the City of Shenandoah as contained on the recorded Plat, which the City claims gave it the right to allow OTD to build another drainage line within the 80 feet so OTD could drain OTD's property across and through Oak Haven's property. The City relied on the following language from the Plat to support this argument:

> That SENIOR HOUSING DEVELOPMENTS II, LLC., duly organized and existing under the laws of the State of Texas, with offices at 11934 ARBORDALE, HOUSTON, TEXAS 77024, owner of the property shown on this plat, SENIOR HOUSING DEVELOPMENTS II, LLC. does for and behalf of said Corporation, its successors and assigns, adopt this plat according to the lines, streets, right-of-ways, alleys, building lines and easements as shown thereon and *does hereby dedicate to the City of Shenandoah* [emphasis added], a Municipal Corporation and Political Subdivision of the State of Texas, the streets, right-of-ways, alleys and easements shown thereon forever, which shall also be for the mutual use and accommodation of all the public utilities desiring to use or using same; no buildings, fences, trees, shrubs shall be constructed or placed upon, over or across the easements shown on the plat, any public utility shall have the right to remove and keep removed all or part of buildings, fences, trees, shrubs, or growths which in any way endanger or interfere with the construction, maintenance, or efficiency of it[s] respective system on any of these easements, and any public utility shall at all times have the right to ingress and egress to and from and upon any of said easements for the purpose of constructing, reconstructing, inspecting, patrolling, maintaining and adding to or removing all or part of its respective system without the necessity at any time of precuring the permission of anyone; and the Corporation does hereby hold the City of Shenandoah, its successors and assigns, its employees, officers, and agents, harmless from and does hereby waive any and all claims, against the City of Shenandoah, its successors and assigns, its employees, officers, and agents, harmless from and does hereby waive any and all claims, against the City of Shenandoah, its successors and assigns, for damages occasioned by the establishing of grades or related to the use of the[ir] property shown on the plat now and in the future by reason of flooding, flow, erosion or damage caused by water, whether surface, flood, rain fall or inflow of public water and SENIOR HOUSING DEVELOPMENTS II, LLC. for

6

and on behalf of said corporation, does hereby bind said corporation, its successors, and assigns, to warrant and forever defend the title to the property so dedicated.

It is undisputed that the Plat depicts an area marked as "80' U.E." upon Oak Haven's Property. The General Notes on the Plat state that "U.E." indicates a utility easement. The Plat then also includes in the legend a specific reference to a "G.S.U. Easement (80' R.O.W.) FILM CODE No.'S 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, 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, 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 & 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[.]" And the "80' U.E." is further marked by two arrows, one on either side of the 80-foot area, with specific references to the G.S.U. (Gulf States Utilities) Easement. The area marked on the Plat as "80' U.E." runs east and west between the northern structures on Oak Haven's Property and the remainder of Oak Haven's structures that are south of the "80' U.E." As indicated on the Plat, the Plat was created in April of 2000, for the Senior Housing Development. Oak Haven contends that the utilities and improvements marked on the Plat were also intended to benefit the Senior Housing Development.[4]

The trial court held a hearing on Oak Haven's Application for Temporary Injunction. The City filed a brief arguing that the injunctive relief sought by Oak Haven should be denied, and Oak Haven filed a brief arguing that the Plat does not create a drainage easement for the private party Defendants (LNG and OTD) or the

---

[4] We have attached to the end of this opinion an image of the Plat for further reference.

7

City and that the Defendants violated the terms of the Plat by placing fences on the 80-foot right-of-way. The trial court denied Oak Haven's Application for Temporary Injunction.

LNG, OTD, and the City filed a Joint Motion for Summary Judgment. The Defendants and the City argued that OTD "contrac[ted] with LNG" to construct the hotel on OTD's property under a permit issued by the City, the City halted construction until the Defendants built a required "underground drainage sewer" running from the hotel and along the 80-foot utility easement depicted on the Plat and into the City-owned detention pond also depicted on the Plat. According to the Joint Motion for Summary Judgment, the drainage line was necessary due to the hotel development and any further development in the City that could cause flooding or drainage issues into Oak Haven's property and buildings. The Defendants and the City argued that the "80' U.E." easement marked on the Plat "is a broad term that is for all utilities including the underground drainage sewer[.]" The motion also alleged that the City holds the legal right to control drainage within the city limits and that the City was granted the easement from Oak Haven to do so as noted in the Plat. The Defendants and the City argued that OTD and LNG were acting under a city permit to construct the drainage line and that they "are the City's authorized agent of the City [] which in this situation is acting on its behalf as a public utility." The motion asserted that no genuine issue of material fact exists in this case which would

8

preclude the trial court from granting the summary judgment, that the case is purely a question of law, and that the trial court already addressed this legal issue in denying Oak Haven's Application for Temporary Injunction.

Oak Haven supplemented its petition, adding a suit to quiet title and a claim for declaratory judgement, requesting that the trial court quiet title and declare pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code that the Plat does not create an easement and that neither Defendants nor the City have any legal right under the Plat or otherwise to construct the drainage line on Oak Haven's property. Oak Haven filed a Motion for Partial Summary Judgment against the Defendants. Oak Haven argued that the Plat does not convey an 80-foot easement to the City and that the Defendants do not have an easement for the drainage line, and they argued that, as a matter of law, the Plat did not create a new easement but merely recognized an existing 1984 80-foot G.S.U. Easement within Oak Haven's Property. The Defendants and the City filed a Joint Motion for Summary Judgment as to Oak Haven's New Claims for "Suit to Quiet Title" and for "Declaratory Relief" Asserted in its Newly-Filed Supplemental Petition and Oak Haven filed a response. Oak Haven filed a second supplement to its petition, alleging that the Defendants destroyed grass and vegetation on Oak Haven's Property and that the destruction of Oak Haven's plants and other vegetation has caused Oak Haven substantial damage and substantial costs to replace the vegetation.

9

The Defendants and the City filed a joint response to Oak Haven's motion for partial summary judgment. The City also filed an Amicus Brief arguing that Oak Haven was not entitled to injunctive relief because certain language in the Plat clearly contemplates use of the easement in the future and clearly grants the City the right to add all the public utilities it deems necessary:

> Senior Housing Developments II, LLC . . . does hereby dedicate to the City of Shenandoah . . . the streets, right-of-ways, alleys and easements shown thereon forever, which shall also be for the mutual use and accommodation of all the public utilities desiring to use or using same . . . .

The City also argued that Oak Haven, in signing and recording the Plat, induced the City and other landowners to believe that an easement had been granted.

Oak Haven filed a Response with Evidentiary Objections to the Defendants' and the City's Joint Motion for Summary Judgment, and Oak Haven also filed a Reply to the City's Brief with respect to Oak Haven's Motion for Partial Summary Judgment. The Defendants filed a Supplemental Brief in Support of its Motion for Summary Judgment and in Opposition to Oak Haven's Motion for Partial Summary Judgment, and the Defendants and the City filed a Joint Response to Oak Haven's Objections to Defendants' Summary Judgment Evidence. Oak Haven filed a Response to Defendants' and the City's Joint Motion for Summary Judgment as to Oak Haven's New Claims for Suit to Quiet Title and for Declaratory Relief Asserted in its Newly-Filed Supplemental Petition, and Oak Haven argued that the only

easement the City has pursuant to the Plat, if any, is to install electrical communication and transmission lines on Oak Haven's Property. Oak Haven responded to the Defendants' and the City's argument that Oak Haven's trespass to try title suit and a suit to quiet title are the same, and they also disagreed with the Defendants' argument that the declaratory judgment action is not appropriate because Oak Haven had already raised the same issues in its trespass cause of action.

Oak Haven filed its Third Supplement to its Original Petition clarifying that the City remained a party in the case because it continued to seek affirmative relief against Oak Haven and further that Oak Haven had requested a declaratory judgment with respect to the Defendants and the City. The Defendants and the City filed a joint notice of nonsuit taking a nonsuit without prejudice of any and all counterclaims pleaded against Oak Haven, the trial court granted the nonsuit, and the trial court ordered that any and all counterclaims pleaded in the case by the Defendants and the City against Oak Haven were dismissed without prejudice.

The City filed an Original Answer and objected to the court's exercise of subject matter jurisdiction because the City alleged it is protected from suit by sovereign immunity and the cause of action does not fall under any waiver of that sovereign immunity. The City specially excepted to Oak Haven's claim that the City is a party by way of the Supplemental Petition because a supplemental petition is not a proper method for adding a party to a lawsuit. The City also specially excepted to

11

Oak Haven's Original Petition and Supplemental Petitions for failure to state a cause of action against the City. The City generally denied Oak Haven's allegations, argued that Oak Haven's claims were barred for failure to give the required notice to the City, and asserted various affirmative defenses.

On April 2, 2019, Oak Haven filed a Notice of Nonsuit of Claims against Intervenor-Defendant the City of Shenandoah without prejudice, and the following day the trial court granted the nonsuit of Oak Haven's claims against the City. On April 16, 2019, the trial court signed an order granting Oak Haven's Motion for Partial Summary Judgment. In a separate order signed the same day, the trial court denied LNG, OTD, and the City's Joint Motion for Summary Judgment.

OTD and LNG then filed additional counterclaims against Oak Haven for tortious interference with existing contract, violations of Chapter 10 of the Civil Practices and Remedies Code, and a wrongful temporary restraining order. LNG and OTD filed their First Amended Answer and LNG filed a Second Amended Answer to Oak Haven's Original Petition and All Supplements Thereto. LNG filed a Rule 39 Motion for Joinder of Persons Needed for Just Adjudication and argued that the City, as an easement owner had an interest that remained unprotected, and that the

City must be joined in the lawsuit under Rule 39 and section 37.006 of the Civil Practice and Remedies Code.[5] The trial court denied the motion.

LNG and OTD each filed traditional motions for summary judgment against Oak Haven. LNG also filed a Third-Party Petition Against the City of Shenandoah, and LNG argued that LNG was entitled to contribution from the City for any liability that may be found to exist from LNG to Oak Haven. The City filed a Third-Party Defendant's Original Answer and Plea to the Jurisdiction. Oak Haven filed a Fourth Supplement to Original Petition asking the trial court to "enjoin and bring an end to the continued trespass." OTD filed a Supplemental Answer with Crossclaim for contribution from the City for any liability that may be found from OTD to Oak Haven. The City filed a Traditional Motion for Summary Judgment against OTD and LNG. LNG filed a Third-Amended Answer to Oak Haven's Original Petition and All Supplements Thereto. The City then filed an Application for Temporary Injunction and asked the trial court to enjoin Oak Haven from altering, damaging or destroying the existing storm drainage during the pendency of the litigation.

In Oak Haven's Fourth Supplement to Original Petition with Second Application for Temporary Injunction Pendente Lite and Application for Permanent Injunction, Oak Haven alleged the Defendants violated section 11.086 of the Texas

---

[5] We note that neither G.S.U. nor its successor in interest, the grantee of the designated 80' U.E. referenced on the Plat, are parties to this suit.

Water Code[6] by diverting or impounding the natural flow of surface waters and permitting the diversion to continue in a way that damages Oak Haven's Property, alleged that the Defendants engaged in the theft of a device that prevented Defendants' illegal drainage of water from OTD's Property to Oak Haven's property, and requested the trial court issue a temporary injunction pendente lite and a permanent injunction to order the Defendants to refrain from draining OTD's Property onto or through Oak Haven's Property.

LNG filed a Motion for Reconsideration and/or Motion for Clarification of the trial court's April 16, 2019 order granting Oak Haven's Motion for Partial Summary Judgment, and OTD joined in the motion. The City also filed a Response to Oak Haven's Motion for Partial Summary Judgment arguing that Oak Haven had no affirmative cause of action against the City, that any claims potentially asserted by Oak Haven against the City are barred by governmental immunity, and that the City owns the easement as a matter of law. The City filed an Answer and Plea to the Jurisdiction as to any affirmative claims by Oak Haven against the City. The City

---

[6] Section 11.086 of the Texas Water Code provides:
    (a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.
    (b) A person whose property is injured by an overflow of water caused by unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.
Tex. Water Code Ann. § 11.086(a), (b).

14

filed a Motion for Summary Judgment Directed at Oak Haven. OTD filed an Amended Motion for Final Summary Judgment against Oak Haven. Oak Haven filed a response to the City's Motion for Summary Judgment, OTD's Amended Motion for Summary Judgment, and LNG's Traditional Motion for Summary Judgment. Oak Haven filed a Supplement to Motion for Summary Judgment in which Oak Haven denied the City's claims that Oak Haven has brought affirmative claims against the City, and Oak Haven requested final relief from the trial court because, according to Oak Haven, if the trial court granted Oak Haven's motion and supplement, the only remaining matter before the Court would be the propriety and amount of attorney's fees. Oak Haven asked the trial court to enter a permanent injunction prohibiting the Defendants and those acting in concert with them from continuing to keep the drainage line on Oak Haven's Property or from draining water onto or through Oak Haven's Property.

On August 18, 2020, the trial court signed an order vacating its April 16, 2019 order granting Oak Haven's motion for partial summary judgment, and the trial court denied Oak Haven's Motion for Partial Summary Judgment and Oak Haven's Supplement to Motion for Summary Judgment, granted the City's Motion for Summary Judgment Directed at Oak Haven, granted OTD's Amended Motion for Final Summary Judgment, granted LNG's Traditional Motion for Summary Judgment, ordered that Oak Haven take nothing on its claims and causes of action,

15

noted that LNG's and OTD's causes of action for contribution against the City are moot, and noted that the City's and OTD's claims for monetary relief and sanctions against Oak Haven, as well as OTD's claims for permanent injunction against Oak Haven, were still pending.

Oak Haven filed a Motion for Final or Partial Summary Judgment against OTD and LNG "in order to expedite the resolution of this dispute in the appellate courts[]" and so it could appeal the trial court's August 18, 2020 order with respect to the easement. The City and OTD each filed a response to the motion. The City and OTD also each filed a motion for attorney's fees. On November 2, 2020, the trial court signed an order denying Oak Haven's Motion for Full or Partial Summary Judgment, denying the City's Motion for Award of Attorney Fees and ordering that the City take nothing on its claims for attorney's fees, denying OTD's Motion for Award of Attorney Fees and ordering that OTD take nothing on its claim for attorney's fees, and noting that OTD's claim for permanent injunction against Oak Haven was still pending.

The City filed a Notice of Nonsuit Without Prejudice of its claims for injunctive relief against Oak Haven. OTD filed a Notice of Nonsuit Without Prejudice of its claims for injunctive relief against Oak Haven. The trial court signed a Notice of Finality that the combination of (1) the Orders on Motion for Summary Judgment, signed August 18, 2020; (2) the Order on Oak Haven's Motion for

16

Summary Judgment and Order on the City's and OTD's Motions for Attorney Fees, signed November 2, 2020; (3) OTD's Notice of Nonsuit Without Prejudice, filed November 10, 2020; and (4) the City's Notice of Nonsuit Without Prejudice, filed on November 13, 2020, resolved all claims among all the parties. The trial court stated that the last of these was signed on November 17, 2020, and that a nonsuit finally disposed of the case. Oak Haven appealed. The City and OTD each filed a Motion for New Trial on the Trial Court's Failure to Award Conditional Attorney Fees in the Event of an Unsuccessful Appeal. The trial court denied the motions.

## Issue on Appeal

In one issue, Oak Haven argues the trial court erred in denying Oak Haven's motion for partial summary judgment and in granting LNG's, OTD's and the City's motions for summary judgment. According to Oak Haven, the trial court erred in denying Oak Haven's motion for partial summary judgment because the Plat does not permit OTD or LNG to build a drainage line on Oak Haven's Property. As to the trial court's granting of LNG's and OTD's motions for summary judgment, Oak Haven argues that fact issues exist regarding Oak Haven's trespass claim and OTD's and LNG's excuses and that summary judgment in favor of the Defendants was improper on Oak Haven's other claims because they were unchallenged in the motion for summary judgment. Oak Haven also argues that the trial court erred in granting summary judgment in favor of the City because the trial court lacked subject

17

matter jurisdiction because Oak Haven had no claims against the City, and the City had no claims against Oak Haven. In the alternative, Oak Haven argues that the City's motion fails on its merits.

Standard of Review

We review a trial court's decision on a motion for summary judgment de novo. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). When the parties file competing motions for summary judgment, and the trial court grants one and denies the other, we review all the questions presented and render the judgment that should have been rendered by the trial court. *See id.* (citing *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004)). In reviewing all questions presented, we examine the parties' summary judgment evidence. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence in the light most favorable to the non-movant and party against whom the summary judgment was rendered. *See id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). To obtain a traditional summary judgment, the "'movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law.'" *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)). If the movant meets his burden, "the burden then

18

shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). But if the movant does not meet its burden, "the burden does not shift, and the non-movant need not respond or present any evidence." *Id.* A defendant moving for summary judgment must plead and conclusively establish each element of its defense as a matter of law to be entitled to summary judgment on an affirmative defense. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Analysis

When Oak Haven filed its Motion for Partial Summary Judgment, it had made claims of trespass, declaratory relief, alleged a suit to quiet title, and Oak Haven sought injunctive relief. The elements of trespass are: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization. *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419, 424-25 (Tex. 2015). A plaintiff who asserts a trespass cause of action bears the burden to prove it did not consent to the defendant's entry on to the land. *Id.* at 418-25.

19

Oak Haven moved for partial summary judgment against OTD and LNG, arguing that the Plat did not permit OTD or LNG to construct a drainage line across Oak Haven's Property because OTD and LNG are not public utilities and because OTD and LNG were attempting to create a new broad utility easement on the 80-foot right-of-way that does not exist on the Plat. According to Oak Haven, the Plat, as a matter of law, clearly did not create new easements but merely recognized the August 14, 1984 easement (the "1984 Easement") within Oak Haven's Property. Oak Haven argued that in eighteen years the Adjacent Property had never flooded so therefore, Defendants' 24-inch drainage line constructed from the Adjacent Property through Oak Haven's Property and to the detention pond "would only mitigate a diversion of the natural flow of surface waters in a manner which causes [] overflow of water onto [Oak Haven's] Property." Oak Haven argued that the dispute involves the easements that Oak Haven's predecessor allegedly granted to the City and to public utilities and that LNG's Larry Kellogg admitted in testimony at the September 28, 2018 hearing that OTD and LNG are not "public utilities." According to Oak Haven, there is no grant of an easement shown on the Plat other than the reference to "G.S.U. Easement (80' R.O.W.) FILM CODE No.'S 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, 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, 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 & 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" on the Plat and that the Plat's references to "80' U.E." all refer to that same 80-foot right-of-way conveyed to G.S.U. Oak Haven argues the words "easements shown thereon forever" in the plain

20

language of the Plat refers to the notation of the 1984 Easement and did not create a new broad easement to the City to use for storm water runoff and it did not give the City the right to allow the hotel builders and private entities (OTD and LNG) the right to build storm or sewer pipelines in the 80-foot easement depicted on the Plat. Instead, at most, the Plat would allow public utilities the right to construct electrical transmission lines and communication lines only in accordance with the 1984 Easement named in the Plat.

As summary judgment evidence, Oak Haven attached an affidavit of Julie Cutrer, the Chief Financial Officer for Oak Haven, and it attached a copy of the 1984 Easement, the Plat, and a "blowup" of the written words on the Plat. Cutrer stated that OTD's and LNG's construction of a twenty-four-inch drainage line would cause overflow waters onto Oak Haven's Property and had already caused injury to Oak Haven, neither OTD nor LNG have any legal right to construct a drainage line on Oak Haven's Property, OTD's and LNG's entry on Oak Haven's Property is nothing short of a naked trespass and has been physical, intentional, voluntary, and unauthorized. According to Oak Haven, the 1984 Easement was not for general purpose but only

> to enter upon and to construct, maintain, operate, inspect, patrol, replace, repair, and remove one line[] of structures, for one circuit, composed of metal with lines of wires, crossarms, wires, stubs, foundations, underground conduits and other usual fixtures for the transmission of electricity and communications, said facilities to be erected simultaneously, or at different future times[.]

21

In their joint response to the motion, OTD, LNG, and the City argued that Oak Haven failed to prove all essential elements of its trespass claim because OTD's and LNG's entry onto Oak Haven's Property was authorized by the easement granted to the City, and the City issued a permit to OTD to construct the underground drainage line. According to the Defendants and the City, the Defendants' construction of the drainage line on Oak Haven's Property was merely to comply with the City's requirement that OTD construct a drainage line within the City's easement, and therefore, Oak Haven has not proven that the Defendants exceeded the bounds of the City's legal rights under the easement. The Defendants and the City also argued Oak Haven offered no evidence that the alleged trespass caused it injury.

The primary questions in this case are whether the Plat in question conveyed an 80-foot easement by dedication to the City, and if it did, whether the scope of the 80-foot easement across Oak Haven's Property allows the City to convey to private parties such as OTD and LNG the right to use the 80-foot easement to build a drainage line in the 80-foot easement.[7]

<u>Did the plat convey by dedication an 80-foot easement to the City?</u>

We first address whether the Plat conveyed an 80-foot easement by dedication to the City. The mere designation of a right-of-way on a recorded plat that otherwise

---

[7] We confine our discussion in this memorandum opinion to express, rather than implied, dedications because the Defendants and the City contend the City holds the 80-foot easement by express dedication contained in the Plat.

22

lacks dedicatory language does not by itself create a dedicatory right-of-way. *Price v. Leger*, No. 09-19-00199-CV, 2019 Tex. App. LEXIS 10781, at **8-9 (Tex. App.—Beaumont Dec. 12, 2019, pet. denied) (mem. op.). In *Price*, the Majority Opinion stated as follows:

> The dedication of a street or ROW [right of way] involves setting apart private land for public purposes. *Ford v. Moren*, 592 S.W.2d 385, 390 (Tex. Civ. App.—Texarkana 1979, writ ref'd n.r.e.); *see Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978). Dedication can occur by express grant or by implication, and an express dedication is generally accomplished by a deed or other written instrument, such as a plat. *Gutierrez v. Cty. of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ). The owner's intent to dedicate land for public use must be clearly shown. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). A dedication of private property for public use is never presumed but must be established by clear and unequivocal intention on the part of the landowner to presently set aside and appropriate a part of his land for public use. *Aransas Cty. v. Reif*, 532 S.W.2d 131, 134 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.).

2019 Tex. App. LEXIS 10781, at **8-9. Further, a Plat which is filed of record showing thereon certain roads or rights of way, and containing dedicatory language dedicating the roads, rights of way, or easements for public use, does not dedicate the use to the public until the City makes an actual appropriation of the dedicated parts by entry, use, or improvement. *See* Tex. Loc. Gov't Code Ann. § 212.011(a). The acceptance or approval of a Plat by the City does not mean the City has accepted a dedication. *See id.* Dedication is a mere offer and the filing of a plat containing the dedication does not constitute an acceptance of the dedication. *See Langford v. Kraft*,

23

498 S.W.2d 42, 49 (Tex. Civ. App.—Beaumont 1973, writ ref'd n.r.e.). Acceptance does not require a formal or express act; implied acceptance is sufficient. *See Viscardi*, 576 S.W.2d at 19; *Moody v. White*, 593 S.W.2d 372, 378-79 (Tex. App.—Corpus Christi 1979, no writ).

> Here, unlike *Price*, this Plat included language that the
>
> owner of the property shown on this plat, SENIOR HOUSING DEVELOPMENTS II, LLC. does for and behalf of said Corporation, its successors and assigns, adopt this plat according to the lines, streets, right-of-ways, alleys, building lines and easements as shown thereon and *does hereby dedicate to the City of Shenandoah* [emphasis added], a Municipal Corporation and Political Subdivision of the State of Texas, the streets, right-of-ways, alleys and easements shown thereon forever, which shall also be for the mutual use and accommodation of all the public utilities desiring to use or using same. . . .

So, the Plat in question contains language that the City contends shows an intentional dedication of the easements shown on the Plat for "use and accommodation of all public utilities desiring to use or using same[.]" The Plat also showed an area designated as a "Detention Basin Area[.]"

The City offered some evidence that when Oak Haven's predecessor developed its own property for the senior living development, the City issued permits, provided utilities to the senior development, and maintained and located utilities to the senior living development, and that the City located sanitary sewer and storm sewers in "the easements" to benefit the senior living development. The City alleged that, at some point after 2000, it purchased the detention basin area from

24

Oak Haven and built a new drainage line in the easements, without complaint by Oak Haven.

The City contends "[t]he plat expressly create[d] two new easements: 1) a Utility Easement, or U.E., and 2) a public utility easement[, and] [] also expressly grants to the City the existing easements in favor of Gulf States Utilities." The private-party Defendants argue the City gave them permission to enter upon Oak Haven's property and to run another drainage line within the previously dedicated 80-foot utility easement on Oak Haven's property. Oak Haven disagrees with these contentions and arguments.

It is undisputed that the Plat specifically references a 1984 recorded 80-foot utility easement. The parties agree that in 1984 an 80-foot utility easement was conveyed to G.S.U. and the easement was filed of record at Film Codes 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, 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, 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 & 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 of the Montgomery County Deed Records. The Plat appears to depict thereon what is labeled as "80' U.E." to be the same as the 1984 80-foot easement previously conveyed to G.S.U. That said, we cannot agree with the City that the Plat created a new easement or that it "expressly grants to the City the existing easements in favor of Gulf States Utilities." We conclude that the language contained in the Plat is unclear on what was intended by the grantor when it referenced an "80' U.E." The Plat could simply be marking the existing 1984 80-foot easement which had previously been conveyed to G.S.U.,

rather than creating a new utility easement. On the record now before us we find there is a genuine issue of material fact as to whether the Plat dedicated an "80' U.E." to the City for public use or whether it simply marked the location of what had previously been conveyed to G.S.U.

Does the easement, if any, as dedicated allow the City to grant LNG and OTD the right to use the easement to construct an additional drainage line to drain OTD's property through Oak Haven's property?

That said, even if we assume without deciding that the Plat had depicted a "new" "80' U.E." or that it had conveyed by dedication the existing G.S.U. 80-foot easement to the City and that the City's evidence was sufficient to show as a matter of law that the City accepted the dedication, we would still have to determine whether the scope of the easement as dedicated allowed the City to grant LNG and OTD the right to use the easement to construct an additional drainage line to drain water or sewer from OTD's property across and through Oak Haven's property.

When an owner of land conveys an easement to a grantee, it confers upon the grantee only the right to use the easement for the specific purpose outlined in the grant. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). It is well established that the grant of an easement does not divest the property owner of title to the fee estate. *See Greenwood v. Lee*, 420 S.W.3d 106, 111 (Tex. App.—Amarillo 2012, pet. denied). An easement is a nonpossessory interest in land. *See Marcus Cable*, 90 S.W.3d at 700. An "easement" or "right-of-way" generally

26

conveys a right to pass over, across, or through the described land for the purposes described in the grant. *See id.* at 701. We refer to the fee estate of the parcel owned by the grantor of the easement as the "servient estate," and the grantee who benefits from the easement holds the "dominant estate." *See Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012); *Hubert v. Davis*, 170 S.W.3d 706, 710 (Tex. App.— Tyler 2005, no pet.).

In *Marcus Cable*, the Texas Supreme Court stated:

> We apply basic principles of contract construction and interpretation when considering an express easement's terms. The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest.
>
> When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning. An easement's express terms, interpreted according to their generally accepted meaning, therefore delineate the purposes for which the easement holder may use the property. Nothing passes by implication "except what is reasonably necessary" to fairly enjoy the rights expressly granted. Thus, if a particular purpose is not provided for in the grant, a use pursuing that purpose is not allowed. If the rule were otherwise,
>
>> then the typical power line or pipeline easement, granted for the purpose of constructing and maintaining a power line or pipeline across specified property, could be used for any other purpose, unless the grantor by specific language negated all other purposes.

90 S.W.3d at 700-01 (internal citations omitted). The "80' U.E." as described in the Plat at issue in this case is expressly for "public utilities[.]" Language on the Plat states that the owners

> dedicate to the City [], the streets, right-of-ways, alleys and easements shown thereon forever, which shall also be for the mutual use and accommodation of all the public utilities desiring to use or using same[.]

The Plat states that the rights-of-way "shall also be for the mutual use and accommodation of all the *public utilities* desiring to use or using same[,]" but the Plat does not convey to the City unlimited "use" or even broad "public use," nor does it allow a neighbor to use the easement for a private purpose. The phrase "public utilities" is not defined in the Plat. When a term is not defined in an agreement, we give the term its common, ordinary meaning. *Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d 118, 121 (Tex. 1996). To determine the common, ordinary meaning of undefined terms used in agreements, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Examiners of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). Black's Law Dictionary defines the term "public utility" as follows:

> A privately owned and operated business whose services are so essential to the general public as to justify the grant of special franchises for the use of public property or of the right to eminent domain, in consideration of which the owners must serve all persons who apply, without discrimination. It is always a virtual monopoly.

Black's Law Dictionary 1232 (5th ed. 1979). In chapter 186 of the Texas Utilities Code, "public utility" means and includes

28

> a private corporation that does business in this state and has the right of eminent domain, a municipality, or a state agency, authority, or subdivision engaged in the business of:
> (1) generating, transmitting, or distributing electric energy to the public;
> (2) producing, transmitting, or distributing natural or artificial gas to the public; or
> (3) furnishing water to the public.

Tex. Util. Code Ann. § 186.001. Similarly, under Section 11.004 of the Texas Utilities Code, "public utility" or "utility" means "(1) an electric utility, as that term is defined by Section 31.002; or (2) a public utility or utility, as those terms are defined by Section 51.002." *See* Tex. Util. Code Ann. § 11.004. Section 31.002 provides the definitions for "Subtitle B Electric Utilities" and defines an "electric utility" as "a person or river authority that owns or operates for compensation in this state equipment or facilities to produce, generate, transmit, sell, or furnish electricity in this state." *Id.* § 31.002(6). Section 51.002 provides the definitions for "Subtitle C Telecommunications Utilities" and defines "public utility" or "utility" as "a person or river authority that owns or operates for compensation in this state equipment or facilities to convey, transmit, or receive communications over a telephone system as a dominant carrier." *Id.* § 51.002(8). In *City of Lubbock v. Phillips Petroleum Co.*, the Amarillo Court of Appeals discussed several cases and concluded that those cases "support the definition of a public utility contained in Black's Law Dictionary setting out the distinguishing characteristics of a public utility, namely, an entity providing essential services to the public at large and which has a monopoly or a

29

virtual monopoly in performing those services." 41 S.W.3d 149, 155-57 (Tex. App.—Amarillo 2000, no pet.). In *Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150, 152-53 (Tex. App.—Fort Worth 1942), *aff'd*, 170 S.W.2d 217 (Tex. 1943), the Fort Worth Court of Appeals stated "'[a] 'public utility' has been described as a business organization which regularly supplies the public with some commodity or service such as gas, electricity, etc.'"

Considering the definitions above and applying such to the record before us, we conclude that neither OTD nor LNG are "public utilities," and further that the 24-inch drainage line LNG installed within the "80' U.E.," is not for use as a public utility pipeline. There is absolutely no evidence in the record nor any allegation from the Defendants or the City that OTD or LNG are "public utilities." Moreover, it is undisputed that the 24-inch drainage line is for the purpose of servicing OTD's property, and for draining it, and it is not being offered to the public at large for performing the delivery of some other commodity or service. We conclude that at most the Plat did no more than dedicate the "80' U.E." for ***public utilities***, and the Plat does not convey the right for the City to grant the neighboring property owner or its contractor the right to use the 80-foot area to build another drainage line through Oak Haven's property to divert storm water or sewer from OTD's property into an adjoining pond so the neighboring private landowner and developer can build on or develop the neighbor's property. We conclude that such use of the alleged 80-

30

foot easement is inconsistent with basic principles of contract construction and interpretation. *See Marcus Cable*, 90 S.W.3d at 700. To allow such would place an additional burden on the servient estate. *See id.* at 703.

We note that the language in other paragraphs on the Plat also references certain aerial easements (that are not at issue in this case). Therein it specifically provides that the aerial easements are dedicated "to the use of the public for public utility purposes[:]"

> FURTHER, Owners have dedicated and by these presents do dedicate to the use of the public for public utility purposes forever unobstructed aerial easements. The aerial easements shall extend horizontally an additional eleven feet, six inches [] for ten feet [] perimeter ground easements or five feet, six inches [] for sixteen feet [] perimeter ground easements or five from a plane sixteen [] above ground level upward, located adjacent to and adjoining said public utility easements that are designated with aerial easements (U.E. & A.E.) as indicated and depicted hereon, whereby the aerial easement totals twenty one feet, six inches [] in width.

> FURTHER, Owners have dedicated and by these presents do dedicate to the use of the public for public utility purposes forever unobstructed aerial easements. The aerial easements shall extend horizontally an additional ten feet [] for ten feet [] back-to-back ground easements or seven feet [] for [] sixteen feet [] back-to-back ground easements from a plane sixteen feet [] above ground level upward, located adjacent to both sides and adjoining sold public utility easements that are designated with aerial easements (U.E. and A.E.) as indicated and depicted hereon, whereby the aerial easements totals [] thirty feet in width.

The "public use" language in the aerial easements is absent in the "80' U.E." in question on the same Plat, and we conclude that the omission was intentional and

31

deliberate. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 67-68 (Tex. 2014) (refusing to "selectively import terms from other provisions [in the parties' contracts] to compensate for the absence of [a] term" in another provision and concluding that the omission of that term was intentional and deliberate).

Because the private drainage line built by LNG for OTD is not a use or purpose consistent with the scope of the easement depicted as the "80' U.E." as stated in the Plat, it exceeds the scope of the interest, if any, purportedly conveyed to the City by the dedication, and the Defendants' use of the easement is not allowed by virtue of the Plat. *See Marcus Cable*, 90 S.W.3d at 700-01. Furthermore, the Defendants' position that the City allegedly required it to locate the line in the "80' U.E." is of no import. We conclude, as a matter of law, that the Defendants' construction of a drainage line on Oak Haven's Property through the area marked as an "80' U.E." was not authorized by the Plat. Accordingly, the trial court erred in denying Oak Haven's Motion for Partial Summary Judgment and Supplement to Motion for Summary Judgment.

<u>The Trial Court Erred in Granting OTD's
Amended Motion for Final Summary Judgment</u>

In OTD's Amended Motion for Final Summary Judgment, OTD raised the following defenses to Oak Haven's trespass claims: (1) the two year statute of limitations for trespass bars Oak Haven's trespass claims because Oak Haven had actual knowledge of similar entries on its property for more than eighteen years; (2)

32

OTD, as an employer, cannot be vicariously liable for alleged damages caused by LNG, an independent contractor and any exceptions to that rule do not apply in this case; and (3) Oak Haven does not allege elements of trespass against OTD and OTD lacked the element of intent required on a trespass claim because there can be no trespass when installing public utilities.

The limitations period for bringing a trespass claim is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Oak Haven argues that they acted promptly and filed suit within weeks of first discovering the OTD and LNG trespass. OTD alleges that Oak Haven had knowledge "of similar entries on its property for more than eighteen years" and points to evidence that OTD contends shows the City "owned and already had in place a 72 inch storm sewer running along the 80 foot easement and then crossing the entirety of the 80 foot easement into the detention pond" and that the pre-existing storm sewer is shown on the Plat. According to OTD, Oak Haven therefore "had actual knowledge of the 72 inch storm sewer and that it crossed [Oak Haven]'s property for more than 18 years [and Oak Haven] never complained that the pre-existing 72 inch storm sewer, or related maintenance, was trespassing on its property." There is some evidence in the record that shows Oak Haven has allowed the City to conduct certain maintenance on the 72-inch pre-existing line in past years, and further that there has been a 72 inch storm sewer line located within the area marked as the 80' U.E., but those facts, even if true, would

33

not constitute a defense to the alleged trespass by OTD or LNG to install the new 24-inch drainage line within the alleged easement. Oak Haven's summary judgment evidence created a genuine issue of material fact regarding the discovery of the alleged trespass claim and whether the claims are barred by the two-year statute of limitations.[8] The trial court erred in granting OTD's Amended Motion for Traditional Summary Judgment on Oak Haven's claim for trespass.

As to OTD's argument in its motion for summary judgment that it was entitled to summary judgment as a matter of law because Oak Haven did not allege elements of trespass against OTD, we disagree.

> "Trespass to real property is an unauthorized entry upon the land of another[] and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). While a property owner has a right to exclude others from his property, the property owner may choose to relinquish a portion of the right to exclude by granting an easement. *See Marcus Cable* [], 90 S.W.3d [at] 700 []. For a plaintiff to recover damages for trespass to real property, he must prove "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). The plaintiff must prove that the defendant exceeded the bounds of any legal rights he may have possessed. *Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 497 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

---

[8] We note that in the Defendants' appellate brief they do not argue the claims were barred by limitations.

*LaBrie v. State*, No. 09-21-00027-CV, 2022 Tex. App. LEXIS 1315, at **21-22 (Tex. App.—Beaumont Feb. 24, 2022, no pet.) (mem. op.).

Oak Haven's Original Petitions and supplements thereto alleged that OTD and LNG trespassed on Oak Haven's land, that OTD hired LNG to construct a drainage line through Oak Haven's Property and that the entry was physical, intentional, voluntary, and unauthorized. Those allegations were sufficient to allege a trespass claim against OTD and LNG. *See id.* (citing *Barnes*, 353 S.W.3d at 764; *Wilen*, 191 S.W.3d at 798). We reject OTD's assertion that it was entitled to summary judgment because OTD lacked the element of intent required on a trespass claim because it hired LNG to construct the drainage line and that it could not be liable for trespass because OTD did not physically engage in the trespass. A trespass may occur when a defendant intentionally causes a third person or a thing to enter land in the possession of another. *See Barnes*, 353 S.W.3d at 764; *LaBrie*, 2022 Tex. App. LEXIS 1315, at *22; *Wilen*, 191 S.W.3d at 798 (citing Restatement (Second) of Torts § 158 cmt. J (1977)). Oak Haven alleged that OTD trespassed on Oak Haven's Property when OTD's contractor, LNG, constructed the drainage line on Oak Haven's Property. *See Labrie*, 2022 Tex. App. LEXIS 1315, at *22 (citing *Barnes*, 353 S.W.3d at 764; *Wilen*, 191 S.W.3d at 798).

We also decline the invitation from OTD to apply the doctrine of derivative sovereign immunity to this case. OTD contends that it holds derivative sovereign

immunity from the City because OTD and LNG completed the drainage work according to the City's requirements and under a City permit. On appeal, OTD and LNG argue that because the City is in control of flooding and required the drainage to be constructed to protect Oak Haven's Property from flooding, OTD and LNG did not have discretion over the design or completion of the drainage line. OTD and LNG rely on the decisions in *Yearsley*, *Nettles*, *Brown & Gay Engineering, Inc.*, and *Glade*, in support of its position. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940); *Nettles v. GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020); *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117 (Tex. 2015); *Glade v. Dietert*, 295 S.W.2d 642 (Tex. 1956). All four of those cases involve facts that are distinguishable from the circumstances in this case. In each of those cases, the contractors were hired by governmental entities on governmental projects. *See Yearsley*, 309 U.S. at 19; *Nettles*, 606 S.W.3d at 729; *Brown & Gay*, 461 S.W.3d at 119; *Glade*, 295 S.W.3d at 643. Here, OTD hired LNG, and nothing in the record before us indicates that LNG was hired by the City, or under the control of the City.

Even if the City holds a "public utility" easement by dedication across Oak Haven's Property within the area marked as an "80' U.E.[,]" the fact that OTD or LNG obtained a City permit is not a substitute for OTD or LNG to properly acquire consent from Oak Haven for OTD or LNG to enter Oak Haven's Property for the purpose of installing another drainage line which will provide private drainage for

36

OTD's property, and the City permit does not transform OTD or LNG into governmental contractors. OTD and LNG failed to present any evidence that (1) OTD and LNG were hired by the City to build the drainage system, (2) the City provided the drainage-system plans through a contract, or (3) OTD or LNG were required by the City to follow the City's plans strictly and without discretion.

"As a general rule, a permit granted by an agency does not act to immunize the permit holder from civil tort liability from private parties for actions arising out of the use of the permit." *FPL Farming, Ltd. v. Envtl. Processing Sys., L.C.*, 351 S.W.3d 306, 310 (Tex. 2011). "[A] permit is not a get out of tort free card." *Id.* at 311.

In *Brown & Gay*, Brown & Gay, a private engineering firm, contracted with the Fort Bend County Toll Road Authority ("the Authority"), a governmental unit, to design and construct a roadway. 461 S.W.3d at 119. Under the contract, the Authority delegated to Brown & Gay the responsibility of designing road signs and traffic layouts, subject to approval by the Authority's board of directors. *Id.* An intoxicated driver entered an exit ramp of the roadway and collided with a car driven by Pedro Olivares Jr., who was killed. *Id.* Olivares's parents sued the Authority and Brown & Gay, alleging that the failure to design and install proper signs, warning flashers, and other traffic-control devices around the exit ramp where the intoxicated driver entered the roadway proximately caused Olivares's death. *Id.* at 120. Brown

37

& Gay filed a plea to the jurisdiction alleging it was entitled to governmental immunity. *Id.* The trial court granted the plea, but the court of appeals reversed, concluding that Brown & Gay was not entitled to sovereign immunity. *Id.*

The Texas Supreme Court affirmed the judgment of the court of appeals and concluded that Brown & Gay as a private contractor was not immune from suit for the consequences of its own actions taken in the exercise of its own independent discretion:

> We have never directly addressed the extension of immunity to private government contractors, but our analysis in *K.D.F. v. Rex*, 878 S.W.2d 589 (Tex. 1994), is instructive.
>
> . . . .
> . . . . [W]e held that another private company that "operate[d] solely upon the direction of [the governmental entity]" and "exercise[d] no discretion in its activities" was indistinguishable from [the governmental entity], such that "a lawsuit against one [wa]s a lawsuit against the other." *Id.* [at 597]. This reasoning implies that private parties exercising independent discretion are not entitled to sovereign immunity.
>
> . . . .
> . . . . The evidence shows that Brown & Gay was an independent contractor with discretion to design the Tollway's signage and road layouts. We need not establish today whether some degree of control by the government would extend its immunity protection to a private party; we hold only that no control is determinative.[]
>
> . . . .
> In sum, we cannot adopt Brown & Gay's contention that it is entitled to share in the Authority's sovereign immunity solely because the Authority was statutorily authorized to engage Brown & Gay's services and would have been immune had it performed those services itself. That is, we decline to extend to private entities the same immunity the government enjoys for reasons unrelated to the rationale that justifies such immunity in the first place. The Olivareses' suit does not threaten allocated government funds and does not seek to hold

38

> Brown & Gay liable merely for following the government's directions. Brown & Gay is responsible for its own negligence as a cost of doing business and may (and did) insure against that risk, just as it would had it contracted with a private owner.

*Id.* at 124, 126, 127. The Court also determined that the rationale underlying the doctrine of sovereign immunity did not support extending that immunity to Brown & Gay. *Id*. at 124; *see also Nettles*, 606 S.W.3d at 732, 736. Similarly, we conclude that the evidence does not support an extension of immunity to LNG or OTD, and the rationale underlying the doctrine of sovereign immunity does not support extending that immunity to OTD or LNG.

Here, OTD owns the property adjacent to Oak Haven's senior living complex. OTD hired LNG to build a hotel on OTD's property. Oak Haven has not sued the City for trespass, and the City did not hire OTD, nor LNG, to complete drainage work on the City's behalf. According to the City, it only issued LNG a permit to construct the hotel, and as part of the hotel construction project, the City required LNG to provide storm water drainage to protect the City's residents from flooding. OTD and LNG have not shown that they were under contract with the City, that the City controlled the building of the drainage line, or that each acted under the City's control and had no discretion in the project. We also reject OTD's and LNG's argument that because the City is generally "in control of flooding" in the City and because the City required the development to include drainage to protect neighbors from potential flooding caused by the development of the Hotel, that means OTD

39

and LNG did not have discretion over the design or completion of the drainage line. The City permit did not mention Oak Haven's Property, and it certainly did not control the manner, method, and means by which OTD and LNG dealt with the drainage.[9] On this record, OTD and LNG have not proven that they lacked discretion in locating, designing, and installing the drainage line on, over, across, or through Oak Haven's Property.

We conclude the trial court erred in granting OTD's Amended Motion for Final Summary Judgment on Oak Haven's trespass claim. Also, OTD's Amended Motion for Final Summary Judgment completely failed to address Oak Haven's claims for violations of section 11.086 of the Texas Water Code, Oak Haven's claim for injunctive relief, Oak Haven's claim to quiet title, Oak Haven's declaratory

---

[9] The City permit basically provides that the City has received a permit fee and generally provides the address of the construction and type of project, and also contains the following notes and certifications:

> NOTES: ****Any changes required on the on-site plans (Aloft Hotels – 19391 David Memorial Dr.) that effect the Aloft Offsite Storm Sewer plans will be at the owner[']s expense****
>
> . . . .
>
> I HEREBY CERTIFY THAT I HAVE READ AND EXAMINED THIS DOCUMENT AND KNOW THE SAME TO BE TRUE AND CORRECT. ALL PROVISIONS OF LAWS AND ORDINANCES GOVERNING THIS TYPE OF WORK WILL BE COMPLIED WITH WHETHER SPECIFIED HEREIN OR NOT. GRANTING OF A PERMIT DOES NOT PRESUME TO GIVE AUTHORITY TO VIOLATE OR CANCEL THE PROVISION OF ANY OTHER STATE OR LOCAL LAW REGULATING CONSTRUCTION OR THE PERFORMANCE OF CONSTRUCTION.

judgment,[10] and Oak Haven's theft claim. A trial court can render summary judgment only on those grounds that are specifically addressed in a motion for summary judgment. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyer Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App.—Dallas 2009, pet. denied); *Wright v. Sydow*, 173 S.W.3d 534, 554 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993)). Where, as here, the trial court granted more relief than the movant requested in the motion for summary judgment, we must reverse the summary judgment on those claims and remand to the trial court the claims not addressed in the summary judgment motion. *See Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997).

The Trial Court Erred in Granting of LNG's
Traditional Motion for Summary Judgment

In its Traditional Motion for Summary Judgment, LNG argued that it cannot be liable for trespass because it had consent from the City to enter Oak Haven's Property, LNG was acting under the authority of the City when it entered Oak Haven's Property, and LNG has never claimed a legal or possessory right to Oak

---

[10] We reject Defendants' assertion that they are not proper parties to Oak Haven's declaratory judgment action as they have a claim or interest that would be affected by a declaration as to whether the Plat creates a public drainage easement or allows OTD to use Oak Haven's Property to drain OTD's storm sewer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties.").

Haven's Property or under the easement. As summary judgment evidence, LNG attached Intervenor, The City of Shenandoah's Third Party Claim Against Oak Haven as well as Oak Haven's Original Petition with Application for Temporary Restraining Order, Application for Temporary Injunction Pendente Lite, and Application for Permanent Injunction with Request for Disclosure. LNG cited to the City's Third Party Claim against Oak Haven as evidence that the City granted LNG permission to construct the drainage line in its easement and required OTD to drain its property through storm drains running through OTD's Property, extending through the City's easement on Oak Haven's Property, and then ending in the detention pond on the opposite side of Oak Haven's Property. According to LNG, the City as owner of the easement had the absolute right to permit OTD and LNG to use its easement for moving storm water from OTD's Property to the detention pond. As to Oak Haven's declaratory judgment action, LNG contends "[t]he scope of the easement is a fight, specifically, between the City and [Oak Haven]" and "[a]ny declaration in this matter cannot define rights or obligations that did not originally exist[]."

We have already concluded that the "80' U.E." as reflected on the Plat did not authorize the City, OTD, or LNG to construct the drainage line on Oak Haven's Property. Even if the City required drainage from OTD's Property as alleged by LNG in its summary judgment motion, LNG has failed to establish as a matter of

law that the City required the drainage line to run through Oak Haven's Property. We have also already determined that LNG and OTD failed to show they are entitled to derivative sovereign immunity.

We conclude the trial court erred in granting LNG's Traditional Motion for Summary Judgment on Oak Haven's trespass, declaratory judgment, and suit to quiet title claims. Additionally, LNG's Traditional Motion for Summary Judgment also failed to address Oak Haven's claim for alleged violations of section 11.086 of the Texas Water Code, Oak Haven's claim for injunctive relief, and Oak Haven's theft claim. Accordingly, we reverse the summary judgment in favor of LNG on those claims and remand to the trial court the claims not addressed in the summary judgment motion. *See Page*, 941 S.W.2d at 102.

<u>The Trial Court Erred in Granting the City's<br>Motion for Summary Judgment Against Oak Haven</u>

When the trial court granted the City's Motion for Summary Judgment Directed at Oak Haven, Oak Haven had no claims against the City and the City had no claims against Oak Haven. Although at one time Oak Haven and the City had claims against each other, those claims were non-suited before the trial court granted the City's Motion for Summary Judgment Directed at Oak Haven. The trial court lacked jurisdiction to grant a summary judgment on the non-suited claims. *See Grimes v. Stringer*, 957 S.W.2d 865, 868 (Tex. App.—Tyler 1997, pet. denied) (trial court had no jurisdiction to grant a summary judgment on claims non-suited prior to

43

the trial court ruling on the motion for summary judgment) (citing *Scott & White Mem. Hosp. v. Schexnider*, 940 S.W.2d 594, 595-96 (Tex. 1996)). Accordingly, we vacate that portion of the trial court's order granting the City's Motion for Summary Judgment Directed at Oak Haven.

## Conclusion

We sustain Oak Haven's issue on appeal. As to the August 18, 2020 order, we vacate that portion of the judgment granting the City's Motion for Summary Judgment Directed at Oak Haven. We reverse the trial court's denial of Oak Haven's motion for partial summary judgment, because we conclude as a matter of law that the plat did not grant the Defendants the right to construct the drainage line on Oak Haven's Property. We reverse the portion of the trial court's judgment granting OTD's Amended Motion for Summary Judgment and LNG's Traditional Motion for Summary Judgment and the trial court's order rendering a take-nothing judgment against Oak Haven. We vacate the trial court's November 2, 2020 order. We remand the cause for further proceedings consistent with this Opinion.

VACATED IN PART; REVERSED AND REMANDED IN PART.

_____
LEANNE JOHNSON
Justice

Submitted on May 19, 2022
Opinion Delivered November 17, 2022

Before Kreger, Horton & Johnson, JJ.

44



## KEY MAP
N.T.S.

## GRAPHIC SCALE
( IN FEET )
1 inch = 100 ft.

### LINE TABLE

| LINE | BEARING | DISTANCE |
|---|---|---|
| L1 | S88°51'59"W | 74.87' |
| L2 | N01°20'59"W | 82.37' |
| L3 | N47°04'48"E | 14.24' |
| L4 | S87°57'38"W | 26.55' |
| L5 | N02°15'09"W | 80.00' |
| L6 | N88°09'44"E | 26.95' |
| L7 | N88°25'25"E | 15.04' |
| L8 | N87°56'36"W | 6.00' |
| L9 | N88°13'39"E | 56.01' |

### CURVE TABLE

| CURVE | RADIUS | Δ | TANGENT | LENGTH |
|---|---|---|---|---|
| C-1 | 30.00' | 90°00'00" | 30.00' | 47.12 |
| C-2 | 200.00' | 07°35'41" | 13.27' | 26.51' |
| C-3 | 200.00' | 07°35'41" | 13.27' | 26.51' |
| C-4 | 30.00' | 07°24'35" | 11.34' | 21.88' |
| C-5 | 30.00' | 90°00'00" | 30.00' | 47.12' |
| C-6 | 30.00' | 90°00'00" | 30.00' | 47.12' |
| C-7 | 200.00' | 07°35'41" | 13.27' | 26.51' |
| C-8 | 200.00' | 07°35'41" | 13.27' | 26.51' |
| C-9 | 200.00' | 76°58'33" | 15.90' | 26.87' |
| C-10 | 200.00' | 10°13'58" | 17.61' | 35.14' |
| C-11 | 20.00' | 90°00'00" | 20.00' | 31.42' |
| C-12 | 20.00' | 41°23'46" | 7.56' | 14.45' |
| C-13 | 80.00' | 20°54'28" | 14.76' | 29.19' |
| C-14 | 80.00' | 21°36'51" | 15.27' | 30.18' |
| C-15 | 200.00' | 14°55'07" | 26.19' | 52.08' |
| C-16 | 150.00' | 18°27'35" | 24.37' | 48.33' |
| C-17 | 50.00' | 55°28'35" | 26.30' | 48.33' |
| C-18 | 25.00' | 76°38'01" | 19.76' | 33.44' |
| C-19 | 100.00' | 15°02'43" | 13.21' | 26.26' |
| C-20 | 100.00' | 36°01'09" | 36.51' | 62.87' |
| C-21 | 100.00' | 20°58'20" | 18.51' | 36.60' |

## GENERAL NOTES

1. "B.L." INDICATES BUILDING LINE.
2. "U.E." INDICATES UTILITY EASEMENT.
3. "W.L." INDICATES WATER LINE.
4. "S.S." INDICATES SANITARY SEWER.
5. "STM. SWR. ESMT." INDICATES STORM SEWER EASEMENT.
6. "S.S.E" INDICATES SANITARY SEWER EASEMENT.
7. "V.B." INDICATES VEGETABLE BARRIER.

BENCHMARK:
F.E.M.A. BENCHMARK NO. 248.
ELEVATION= 138.79

TEMPORARY BENCHMARK:
NORTH RIM OF MANHOLE ON INLET LOCATED
ON THE WEST SIDE OF McCOWAN AT THE
SOUTH LINE OF TENNIS COURTS AND OAK
RIDGE HIGH SCHOOL
ELEVATION = 144.30

## OAK HAVEN APARTMENT HOMES

BEING A TRACT OF 17.386 ACRE
TRACT OF LAND OUT OF A 23.19 ACRE
TRACT LOCATED IN THE MONTGOMERY
COUNTY SCHOOL LAND SURVEY, ABSTRACT
350, MONTGOMERY COUNTY, TEXAS
CITY OF SHENANDOAH, MONTGOMERY COUNTY, TEXAS

SCALE 1"=100'          APRIL 14, 2000
1 BLOCK                1 RESERVE

OWNERS:
SENIOR HOUSING DEVELOPMENTS II, LLP.
11934 ARBORDALE
HOUSTON, TX, 77024
(361)-564-9292, FAX: (361)-564-9355

ENGINEER:

UNITED ENGINEERS, INC.
CONSULTING ENGINEERS AND SURVEYORS

File No. 2000-074739   Cab. O Sheet 142